## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, In their own right and as personal representatives of the ESTATE OF RYAN K. SCHORR, | : : : : | |
| | : | CIVIL ACTION NO. 1:01-0930 |
| Plaintiffs | : | (KANE, D.J.) (MANNION, M.J.) |
| v. | : | |
| BOROUGH OF LEMOYNE; BOROUGH OF WORMLEYSBURG; WEST SHORE REGIONAL POLICE DEPT.; HOWARD DOUGHERTY, Chief, West Shore Regional Police Dept.; CUMBERLAND COUNTY; ROBERT GORIL, Executive Director, Cumberland County Mental Health/Mental Retardation Dept.; and HOLY SPIRIT HOSPITAL, | : : : : : : : | |
| Defendants | : | |

**FILED**
**WILKES-BARRE**
DEC 2 7 2002
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

## N O T I C E

TO:  ALL COUNSEL OF RECORD

NOTICE IS HEREBY GIVEN that the undersigned has entered the following:

**Report and Recommendation of Magistrate Judge  Mannion dated 12/27/02.**

Any party may obtain a review of the magistrate judge's above proposed determination pursuant to Rule 72.3, M.D.PA, which provides:

## 72.3 REVIEW OF REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGES ADDRESSING CASE DISPOSITIVE MOTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall made a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

MALACHY E. MANNION
United States Magistrate Judge


Dated:    December 27, 2002

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, In their own right and as personal representatives of the ESTATE OF RYAN K. SCHORR, | : : : : |
| | : CIVIL ACTION NO. 1:01-0930 |
| Plaintiffs | : (KANE, D.J.) (MANNION, M.J.) |
| v. | : |
| BOROUGH OF LEMOYNE; BOROUGH OF WORMLEYSBURG; WEST SHORE REGIONAL POLICE DEPT.; HOWARD DOUGHERTY, Chief, West Shore Regional Police Dept.; CUMBERLAND COUNTY; ROBERT GORIL, Executive Director, Cumberland County Mental Health/Mental Retardation Dept.; and HOLY SPIRIT HOSPITAL, | : : : : : : : : |
| Defendants | : |

FILED
WILKES BARRE

DEC 2 7 2002

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

## REPORT AND RECOMMENDATION

Presently pending before the court are: (1) Defendants West Shore Regional Police Commission, ("Commission"), and Chief Howard Dougherty's, ("Dougherty"), Motion to Dismiss Plaintiffs' First Amended Complaint, (Doc. No. 34); and (2) Defendant Cumberland County's Motion to Dismiss Counts IV, V, VI and VII of the plaintiffs' amended complaint, (Doc. No. 36).

## I. FACTUAL ALLEGATIONS

Plaintiffs' decedent, Ryan K. Schorr, ("Schorr"), suffered from bipolar

disorder. Schorr's condition deteriorated shortly before November 18, 2000, and his roommate and family applied for his involuntary committal pursuant to § 302 of the Pennsylvania Mental Health Procedures Act. A crisis intervention worker employed by Holy Spirit Hospital took and evaluated the application, and caused an order for involuntary commitment to be issued. The worker then contacted the Cumberland County Control Unit and arranged for West Shore Regional Police Department officers to detain Schorr pursuant to the commitment order and related warrant.

Two officers went to Schorr's apartment and took him to Holy Spirit Hospital, where he was placed in a "high security" room in the emergency department to wait for an evaluation. When a crisis intervention worker entered the room, Schorr pushed past the worker and escaped from custody. Schorr's family called his apartment and, finding him there, called police to report his whereabouts. Two officers were again dispatched to Schorr's apartment to take him back into custody and to Holy Spirit Hospital. A violent confrontation ensued and Schorr was shot and killed by one of the officers.

## II. MOTION TO DISMISS STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The court will not dismiss the complaint for failure to state a cause of action "unless it appears beyond doubt that the plaintiff[s] can prove no set

2

of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To this end, the court must focus on whether the plaintiffs are entitled to offer evidence to support their claims, rather than whether they will ultimately prevail. See Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997).

In deciding a motion to dismiss, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of plaintiff[s'] cause of action." Id.

## III. DEFENDANTS COMMISSION AND DOUGHERTY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs allege causes of action against defendants Commission and Dougherty in Counts I, IV, V, VI, and VII of their first amended complaint. Defendants Commission and Dougherty move to dismiss these counts in their entirety.

In Count I of the plaintiffs' first amended complaint, the plaintiffs allege that for many years it has been known by law enforcement agencies in general, and defendants in particular, that a substantial percentage of police encounters are with persons who have emotional disturbance or mental illness, and that dealing with such persons requires the taking of special

3

precautions designed, <u>inter alia</u>, to avoid the provocation of violence. The plaintiffs allege that defendants were aware, at all material times, that West Shore Regional Police officers are frequently required to encounter emotionally disturbed and mentally ill persons in connection with involuntary commitment procedures. According to the plaintiffs, easily implemented, effective training on how to respond to emotionally disturbed and mentally ill persons has been available to the law enforcement community for over twenty years. In addition, the plaintiffs claim that federal law, including the Americans with Disabilities Act[1] and the Rehabilitation Act[2], conferred on defendants affirmative duties to modify policies, practices and procedures to insure that persons with disabilities are not denied services or treated in a discriminatory manner.

Despite their knowledge of these facts, the plaintiffs allege that the defendants, with deliberate indifference: (1) failed to provide West Shore Regional Police officers with any training for dealing with emotionally disturbed or mentally ill persons, for peacefully executing involuntary commitment orders, or for handling difficult encounters with mentally ill citizens without resorting to force, and failed to establish and maintain policies, practices and procedures to insure that persons with disabilities were not discriminated against or otherwise harmed in the course of their contact

---

[1]<u>See</u> 42 U.S.C. § 12132.

[2]<u>See</u> 29 U.S.C. § 794.

4

with police service; (2) the defendants implemented and maintained policies and procedures which prevented West Shore Regional Police officers from availing themselves of available resources for dealing with emotionally disturbed and mentally ill persons, including but not limited to coordination with, or "back-up" from, other law enforcement agencies and/or crisis intervention units; and (3) maintained policies and practices which prevented West Shore Regional Police officers from employing instruments of force less lethal than firearms and batons.

The plaintiffs allege that as a result of the failure and/or inability of the officers to employ proper methods and procedures for dealing effectively and peacefully with persons in Schorr's condition, Schorr was injured and died. This failure and/or inability, according to the plaintiffs, resulted from defendants' failure to train and/or from the customs, practices or policies of the West Shore Regional Police Department for which the defendants are responsible. The plaintiffs allege that defendants' culpable acts and/or failures to act deprived Schorr of his life in violation of the Fourteenth Amendment[3] and his rights under federal law, and deprived plaintiffs of their interest in Schorr's life in violation of the Fourteenth Amendment[4].

---

[3]The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4]The defendants question the plaintiffs' ability to claim that their own
(continued...)

5

In support of their motion to dismiss, defendants Commission and Dougherty initially argue that Count I of the plaintiffs' first amended complaint alleging a claim pursuant to 42 U.S.C. § 1983 should be dismissed because the plaintiffs failed to plead an underlying constitutional violation, an essential element of a § 1983 claim.

Specifically, the defendants argue that, pursuant to Monnell v. New York City Department of Social Services, 436 U.S. 658, 694 (1970), in order to establish a claim for municipal liability under § 1983, a plaintiff must plead and

---

[4](...continued)
constitutional rights were violated because they have been deprived of their interests in decedent's life. Citing to two District of Colorado cases from 1982 and 1983, the defendants state that courts have explicitly rejected the notion that such a right is protected by the Constitution. However, the court's research has revealed that several courts have held that a parent has a protectable liberty interest "in the companionship, care, custody, and management of his or her children . . ." See Stanley v. Illinois, 405 U.S. 645, 651 (1972); Lassiter v. Dept. of Soc. Serv. Of Durham County, 452 U.S. 18 (1981); Santosky v. Kramer, 455 U.S. 745, 758-59 (1982)); See also Estate of Cooper v. Leamer, 705 F.Supp. 1081, 1086-87 (M.D.Pa.1989)(summary judgment denied on a § 1983 claim by parents for denial of the "right to ... companionship, care, custody, and management" of their adult son, not in his parents' custody, but married with children of his own); Pahle v. Colebrookdale, — F.Supp.2d ---, 2002 WL 475131, *18+ (E.D.Pa. March 26, 2002); Schieber v. City of Philadelphia, --- F.Supp.2d ---, No. 98-5648, 2001 WL 869034, *2 (E.D.Pa. May 9, 2001)(parents have an actionable liberty interest in the life of their independent adult daughter); McCurdy v. Dodd, No. 99-5742, 2000 WL 250223 (E.D.Pa. Feb.28, 2000)(father permitted to proceed on § 1983 claim for loss of companionship of his child, without reference to child's age); Agresta v. Sambor, 687 F.Supp. 162, 164 (E.D.Pa.1988)(parents stated cause of action under § 1983 despite age and marital status of son)).

prove that (1) an officer of a municipality, acting under color of law, deprived an individual of his constitutional rights; (2) the municipality had a "policy, practice or custom"; and (3) the municipality's implementation of that "policy, practice or custom" caused the officer to deprive the individual of his constitutional rights.

Citing to Graham v. Connor, 490 U.S. 386, 395 (1989), the defendants argue that claims involving the use of excessive force during the course of an arrest must be analyzed under the Fourth Amendment, and that in order to establish a claim under § 1983 based upon a Fourth Amendment violation, a plaintiff must plead facts which show that an individual was seized with an exercise of force which was objectively unreasonable. The defendants argue that, since the plaintiffs have failed to allege that the officers in this case used an unreasonable amount of force in attempting to apprehend Schorr, their complaint fails to sufficiently allege a § 1983 cause of action.

According to the defendants, the plaintiffs' allegation that the officers "deprived [decedent] of his life in violation of the Fourteenth Amendment" does not establish the deprivation of a constitutional right in a case involving the alleged use of excessive force by police. The defendants assert that the claim that Schorr lost his life at the hands of police, without more, cannot establish the deprivation of a constitutional right. Since plaintiffs have failed to plead that a police officer deprived Schorr of a constitutional right, the defendants argue that they have failed to state a cognizable action under §

7

1983.

In considering the defendants' argument, the defendants have construed the plaintiffs' § 1983 claim as challenging the actions of the officers in effectuating Schorr's arrest as being unreasonably excessive and, consequently, analyzed the claim under the Fourth Amendment. However, the court does not construe the plaintiff's complaint in such a manner. In fact, it would appear that the plaintiffs are not challenging the actions of the individual officers in this case, but are challenging the failure of the defendants to adequately train the officers to deal with situations involving emotionally disturbed or mentally ill persons, such as Schorr, and the defendants' policies and/or lack thereof, which prevented the officers from availing themselves of available resources to deal with situations such as the one involved in this case. It is from the defendants' failure to train the officers and/or from the customs, practices or policies of the defendants, which the plaintiffs allege the constitutional violation occurred, (i.e., the deprivation of the plaintiffs' and Schorr's substantive due process rights under the Fourteenth Amendment).

In opposing the defendants' motion to dismiss, the plaintiffs rely on the Third Circuit's decision in <u>Fagan v. City of Vineland</u>, 22 F.3d 1283 (3d Cir. 1994). In <u>Fagan</u>, the plaintiffs claimed that the municipality violated their Fourteenth Amendment rights by following a policy of not properly training its police officers on how to conduct high-speed pursuits in compliance with

certain guidelines.  In considering the issue, the Third Circuit held that a

municipality can be liable under § 1983 and the Fourteenth Amendment for

a failure to train its police officers with respect to high-speed automobile

chases, even if no individual officer participating in the chase violated the

Constitution.  In so holding, the court stated:

> We hold that in a substantive due process case
> arising out of a police pursuit, an underlying
> constitutional tort can still exist even if no individual
> police officer violated the Constitution.  Unlike in
> Heller[5], the plaintiffs in this case brought separate,
> independent constitutional claims against the
> pursuing officers and the City.  These claims are
> based on different theories and require proof of

---

[5]In City of Los Angeles v. Heller, 475 U.S. 796 (1986), police officers
were accused of making an arrest with excessive force and without probable
cause.  The jury returned verdicts in favor of the officers but against the city.
The Court reversed the verdict against the city stating that there was no case
law to authorize the award of damages against a municipality based on the
actions of one of its officers when in fact the jury concluded that the officer
inflicted no constitutional harm.  The Court went on to state that, if a person
has suffered no constitutional harm at the hands of the individual police
officer, the fact that departmental regulations might have authorized the use
of constitutionally excessive force was beside the point.

In discussing Heller, the Third Circuit indicated that the Supreme Court
treated Heller as a case brought for violations of the Fourth Amendment and
characterized the liability of the City of Los Angeles and its Police
Commission as one of respondeat superior.  In doing so, the Court did not
address any independent § 1983 claim against the City and the Commission.
Because of this, the court in Fagan stated that Heller could not be applied to
substantive due process claims directly against a municipality, and in so
finding, noted that the Supreme Court in Albright v. Oliver, 510 U.S. 266
(1994) itself drew a line between a claim for Fourth Amendment violations and
one for substantive due process violations.

> different actions and mental states. The pursuing officers are liable under section 1983 if their conduct "shocks the conscience." Fagan v. City of Vineland, 22 F.3d 1296 (3d Cir. 1994)(in banc). The City is liable under section 1983 if its policymakers, acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty.

Fagan, 22 F.3d at 1292.

It would appear then that, as the plaintiffs argue, a direct cause of action against municipalities and their supervisory officials lies under § 1983, if the plaintiffs allege a violation of the Fourteenth Amendment where those defendants "acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to [act] in an unsafe manner and deprive the plaintiffs of life or liberty." Fagan, 22 F.3d at 1292. Since the plaintiffs in this case have so alleged, at this stage of the proceedings accepting all of the plaintiffs' allegations as true, the court finds that the plaintiffs have stated a § 1983 cause of action against the defendants. Thus, the defendants' motion to dismiss Count I of the plaintiffs' first amended complaint should be denied.

Next, defendants Commission and Dougherty argue that Count V of the plaintiffs' first amended complaint, alleging a claim under the ADA, should be dismissed because the ADA does not apply to arrests.[6]

---

[6]At the time of the filing of the motion to dismiss, defendants Commission and Dougherty argued that the plaintiffs' Rehabilitation Act claim (continued...)

Count V of the plaintiffs' first amended complaint alleges that Title II of the ADA prohibits any local government or department thereof from denying the benefits of their services, programs, or activities to any persons with a disability, or discriminating against any person with a disability. The plaintiffs' complaint alleges that defendant Commission is a public entity within the meaning of Title II and that defendant Dougherty is an agent of that entity. Moreover, the plaintiffs allege that defendants Commission and Dougherty violated Schorr's federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable modifications to their policies, practices and procedures to ensure that his needs as an individual with a disability would be met.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.  12132; Bartlett v. New York State Bd. Of Law Examiners, 226 F.3d 69, 78 (2d Cir. 2000).  A plaintiff can succeed in an ADA action if he or she can establish that

---

[6](...continued)

should also be dismissed on this ground.  However, since the filing of defendants Commission and Dougherty's motion to dismiss, the plaintiffs have entered into a stipulation of partial dismissal with these defendants in which Count IV of the plaintiffs' complaint (i.e., the Rehabilitation Act claim), was voluntarily dismissed with prejudice as against these defendants. (Doc. No. 57).

11

they were "excluded from participation in or denied the benefits, services, programs, or activities of a public entity," or were "subjected to discrimination by any such entity" on account of their disability. Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000)(citations omitted).

Under Title II of the ADA, there is no individual liability, Anthony v. City of New York, 2001 WL 741743 *10 (S.D.N.Y.)(citing Hallett v. New York State Dep't of Corr. Svcs., 109 F.Supp.2d 190, 199 (S.D.N.Y. 2000)), and individual defendants cannot be named in their official capacity under the ADA, Id. (citing Menes v. CUNY University, 92 F.Supp.2d 294, 306 (S.D.N.Y. 2000)). As such, Count V of the plaintiffs' first amended complaint alleging an ADA claim against defendant Dougherty in his individual and official capacities should be dismissed.

Title II of the ADA does apply, however, to "any State or local government," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. Defendant Commission does not challenge the plaintiffs' assertions that Schorr was a disabled person under the ADA and that the Commission is a public entity covered by the ADA, but asserts that courts have held that an arrest is not the type of governmental service that is covered by the ADA. See Hainze v. Richards, 207 F.3d 795 (5th Cir.), cert. denied, 531 U.S. 959 (2000).

In considering Title II cases, courts have developed two theories in

12

cases involving police conduct. Initially, the "wrongful arrest" theory derives from that part of the ADA which protects an individual from being "subjected to discrimination" by a public entity. See 42 U.S.C. § 12132. The wrongful arrest theory is based on a claim that police wrongly arrested someone with a disability because they misperceived the effects of a disability as criminal activity. Gohier v. Enright, 186 F.3d 1216 (10th Cir. 1999). This theory only applies when the plaintiff was engaged in lawful conduct which was misperceived as being wrongful; it is not applicable when the plaintiff's actions were unlawful at the time of the arrest. See Gohier, 186 F.3d at 1221 (plaintiff could not rely on the wrongful arrest theory where he had committed an assault).

To the extent that the plaintiffs in this case attempt to rely on the wrongful arrest theory in support of their ADA claim, the plaintiffs' own complaint indicates that Schorr was engaged in unlawful conduct at the time of his attempted arrest, and any claim by the plaintiffs to the contrary is without merit. In fact, the plaintiffs' own complaint indicates that, after Schorr had initially been taken into custody pursuant to a valid warrant and involuntary commitment order, he pushed past a hospital worker and escaped from custody. It was only during the officers' attempt to return Schorr to custody pursuant to the warrant and commitment order that the incidents complained of unfolded. Thus, because Schorr was not engaged in lawful conduct at the time of his attempted arrest, the plaintiffs' ADA claim does not

13

fall within the wrongful arrest theory.

The second theory of relief under which the plaintiffs may recover is referred to as the "reasonable accommodation" theory. This theory arises when a qualified individual with a disability alleges that he or she was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity. Hainze, 207 F.3d at 795; Gohier, 186 F.3d at 1220-21.

In Hainze, supra, the Fifth Circuit held that actions taken by police officers during the course of an arrest were not actionable under Title II of the ADA[7]. In so holding, the court stated:

> Despite [plaintiff's] claims, we hold that Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to

---

[7]Similar to the case at hand, in Hainze, the plaintiff's aunt called police and requested that they transport her nephew to the hospital for mental health treatment because he was depressed and threatened to commit suicide. When the police officers arrived, the plaintiff was standing outside holding a knife in his hand. The plaintiff began shouting profanities and began approaching the officers. The plaintiff ignored an officer's order to stop, and the officer fired two shots into the plaintiff's chest. The plaintiff survived the shooting and brought a claim pursuant to Title II of the ADA.

> securing the safety of themselves, other officers, and
> any nearby civilians, would pose an unnecessary risk
> to innocents.

Hainze, 207 F.3d at 801.  Thus, Hainze makes clear that Title II of the ADA

does not apply to the actions of officers while affecting an arrest.

In the instant case, the plaintiffs argue that this interpretation of Hainze

"misses the mark" and that the Hainze court made clear that the ADA may

include an arrest "once the area [is] secure and there [is] no threat to human

safety."[8]  Such was not the case here.  In fact, the plaintiffs' own complaint

indicates that the officers were only in the course of attempting to secure the

scene and assure that there was not threat to Schorr, themselves or others

when the incidents complained of occurred.

In the alternative, the plaintiffs argue that cases such as Hainze should

only apply to those situations where the person is behaving violent or criminal

before police arrive on the scene.  Again, the plaintiffs argue that Schorr was

not engaging in unlawful activity at the time of his attempted arrest, and as

such, they argue that the court should not apply the holding of Hainze to this

case. However, as previously noted, the plaintiff was, in fact, engaging in

unlawful activity at the time of his attempted arrest, in that he had escaped

from custody.  As such, the plaintiffs' argument is without merit.

_____

[8]The defendants do not dispute that the ADA may apply in such post-arrest circumstances, but does not apply where officers in the course of an arrest have yet to secure the scene and assure that there is no threat to human safety.  The court agrees.

15

Because the plaintiffs have failed to sufficiently allege a Title II cause of action under either the wrongful arrest or reasonable accommodation theory, the defendants' motion to dismiss Count V of the plaintiffs' complaint should be granted.

The defendants further argue that the court should dismiss all claims against defendant Dougherty because the Commission is already named as a defendant.    In support of their argument, the defendants state that the plaintiffs' complaint is silent as to whether defendant Dougherty is sued in his individual or official capacity, or both.  Since the assertions made against defendant Dougherty all relate to his role as the Chief of the West Shore Police Department and contain no indication that he is alleged to have participated in, directed and acquiesced to the shooting of decedent, the defendants argue that an inference may be drawn that defendant Dougherty is named in his official capacity only. The defendants argue that naming an official in his official capacity is the equivalent of naming the governmental entity as a party, and since the Commission is named as a party, it is redundant and unnecessary to have Chief Dougherty as a party.  See Satterfield v. Borough of Schuylkill Haven, 12 F.Supp.2d 423, 431-32 (E.D.Pa. 1998).

In their response, citing to ¶¶ 43 and 44 of their complaint, the plaintiffs state that they have alleged that defendant Dougherty was personally involved in the incidents complained of, in that he himself issued policies and

procedures which resulted in the deprivation of the plaintiffs' constitutional rights. If proven, the plaintiffs contend that this conduct would confer liability on defendant Dougherty under § 1983, but may not necessarily be imputed to the defendant Commission, and that such imputation would only be proper if defendant Dougherty had "final policy-making authority." Since the nature of defendant Dougherty's authority has not yet been determined at this stage of the proceedings, the plaintiff's argue that the court should not dismiss the claims against him. The court agrees.[9]

In order to state a claim against defendant Dougherty in his individual capacity, plaintiffs must allege "participation, personal direction of the complained-of conduct or knowledge of and acquiescence in the complained-of conduct." Pellegrino Food Prods. Co. v. City of Warren, 136 F.Supp.2d 391, 404 (W.D.Pa. 2000). At this state of the proceedings, the plaintiffs have alleged sufficient personal involvement on the part of defendant Dougherty to survive a motion to dismiss. As such, the defendants' motion to dismiss the instant action against defendant Dougherty in its entirety should be denied.

Finally, defendants Commission and Dougherty argue that the court should dismiss Counts VI and VII of the plaintiffs' first amended complaint,

---

[9]The defendants argue that ¶¶ 43 and 44 are insufficient to state a personal cause of action against defendant Dougherty, as they do not specifically mention defendant Dougherty by name, but are against "all of the 'defendants.'" Upon review, ¶¶ 43 and 44 are brought under Count I of the complaint, which is specifically brought against defendants Commission and Dougherty.

17

(i.e., the Wrongful Death and Survival Act claims), because the underlying §
1983 and ADA claims fail.

To the extent that the court has determined that the plaintiffs should be
permitted to proceed with their § 1983 claim, the defendants' argument fails.

However, defendants Commission and Dougherty further argue that
Counts VI and VII should be dismissed in the alternative because they are
immune from suit under Pennsylvania's Survival and Wrongful Death Acts by
virtue of the Pennsylvania Political Subdivision Tort Claims Act, ("PSTCA").
See 42 Pa.C.S.A. § 8541; See also Campbell v. City of Philadelphia, 1990 WL
102945, at *6 (E.D.Pa. July 18, 1990).

Defendant Commission is a political subdivision and/or local agency.
The PSTCA grants governmental immunity to political subdivisions against
claims for damages on account of any injury to a person or property except
for negligent acts falling within one of eight categories: (1) vehicle liability; (2)
care, custody or control of personal property; (3) real property; (4) trees, traffic
controls and street lighting; (5) utility service facilities; (6) streets; (7)
sidewalks; and (8) care, custody or control of animals.   42 Pa.C.S.A. §
8542(b).  Plaintiffs do not allege negligence against defendant Commission
within any of § 8542's enumerated categories.  Thus, the PSTCA bars the
plaintiffs' state law claims against defendant Commission, and the
defendants' motion to dismiss Counts VI and VII against defendant
Commission should be granted on this basis.

18

With respect to defendant Dougherty, individual defendants are immune from liability for acts within the scope of their employment to the same extent as their employing agency, except that they are liable if their conduct amounts to "actual fraud, crime, actual malice or willful misconduct." See 42 Pa.C.S.A. §§ 8545, 8550. "Willful misconduct" as used in § 8550 requires that the defendant actually knew that his conduct was illegal. See Sameric Corporation of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998)(citing Renk v. City of Pittsburgh, 537 Pa. 68 (1994); In re City of Philadelphia Litig., 938 F.Supp. 1264, 1271 (E.D.Pa. 1996)). Although the plaintiffs have alleged that defendant Dougherty acted with "deliberate indifference", they have not alleged that his conduct amounted to "actual fraud, crime, actual malice or willful misconduct. Thus, defendants Commission and Dougherty's motion to dismiss Counts VI and VII of the plaintiffs' first amended complaint against defendant Dougherty should also be granted.

## IV. DEFENDANT CUMBERLAND COUNTY'S MOTION TO DISMISS COUNTS IV, V, VI AND VII OF THE PLAINTIFFS' AMENDED COMPLAINT

In its motion to dismiss, defendant Cumberland County moves the court to dismiss Counts IV through VII of the plaintiffs' first amended complaint, (i.e., the Americans with Disabilities Act claim, the Rehabilitation Act Claim, and the Wrongful Death and Survival Act claims), and in support thereof,

relies upon the applicable arguments set forth by defendants Commission and Dougherty in support of their motion to dismiss.

For the reasons set forth above, defendant Cumberland County's motion to dismiss should be granted with respect to Counts V, VI, and VII of the plaintiffs' first amended complaint.

Moreover, as noted above, Count IV of the plaintiffs' first amended complaint, (i.e., the Rehabilitation Act claim), has only been voluntarily dismissed as to defendants Commission and Dougherty. It still stands with respect to defendant Cumberland County. With respect to this claim, as noted by the court in Hainze:

> the language of Title II [of the ADA] tracks the language of Section 504 of the Rehabilitation Act of 1973, and Congress' intent was that Title II extend the protections of the Rehabilitation Act 'to cover all programs of the state of local governments, regardless of the receipt of federal financial assistance' and that it 'work in the same manner as Section 504.' In fact, the statute specifically provides that '[t]he remedies, procedures and rights' available under Section 504 shall be the same as those available under Title II. Jurisprudence interpreting either section is applicable to both."

Hainze, 207 F.3d at 799.

Thus, because the court has recommended that the defendants' motions to dismiss the plaintiffs' ADA claim be granted, the court further recommends that the defendant Cumberland County's motion to dismiss the plaintiffs' Rehabilitation Act claim be granted.

20

## V. CONCLUSION

On the basis of the foregoing, it is recommended that:

**(1)** Defendant Commission and Dougherty's motion to dismiss Count I of the plaintiffs' first amended complaint, (Doc. No. 34), be denied;

**(2)** Defendant Commission and Dougherty's motion to dismiss Count V of the plaintiffs' first amended complaint, (Doc. No. 34), be granted;

**(3)** Defendant Commission and Dougherty's motion to dismiss Counts VI and VII of the plaintiffs' first amended complaint, (Doc. No. 34), be granted; and

**(4)** defendant Cumberland County's motion to dismiss Counts IV, V, VI, and VII of the plaintiffs' first amended complaint, (Doc. No. 36), be granted.

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:**    December 27, 2002

21