IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH I. SCHORR, SUSAN SCHORR, in their own right and as personal representatives of the ESTATE OF RYAN K. SCHORR | : JURY TRIAL DEMANDED :  :  :  : |
| v. | : HONORABLE YVETTE KANE : (MANNION, M.J.) |
| Plaintiffs, | : |
| BOROUGH OF LEMOYNE, et al. | : |
| Defendants. | : NO. 1:CV-01-0930 |

FILED
SCRANTON

JAN 1 3 2003

PER _____

**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE
REPORT AND RECOMMENDATION DATED 12/27/02**

Plaintiff, Keith I. Schorr, and Susan Schorr by and through their undersigned counsel, hereby raise the following objections to the Report and Recommendation of Magistrate Judge Mannion dated 12/27/02:

1. Plaintiffs object to the recommendation to dismiss Count V of their amended Complaint in which they allege that the West Shore Regional Police Commission violated Title II of the ADA by failing to train its police officers to respond to the needs of individuals with disabilities to ensure that individuals such as Ryan Schorr would not be discriminated against or denied the benefits of their services, programs or activities. (See Magistrate's Report and Recommendation, page 11).

2. Plaintiffs object to the Report and Recommendation of the Magistrate Judge to the extent that it concludes that plaintiff's ADA claim must fail because they cannot succeed under a "wrongful arrest theory" or a "failure to accommodate" theory in support of an ADA claim. (See Report and

Recommendation of Magistrate Judge at page 13-16). Contrary to the Magistrate's Report and Recommendation, plaintiffs' ADA claim does not derive from a "wrongful arrest theory" or a "failure to accommodate". Therefore, the Court's reliance upon Gohier v. Enright, 186 F.3d 1216 (10th Cir, 1999), and Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000) is misplaced.

For the reasons set forth above, and further explained in plaintiffs' supporting brief, plaintiffs request that the portion of the Magistrate's Report and Recommendation recommending that Count V of plaintiffs' complaint against defendant West Shore Regional Police Commission be dismissed be set aside, and defendant's motion to dismiss be denied.

Respectfully submitted,

Jamie C. Ray, Esquire
Stephen S. Pennington, Esquire
Center for Disability Law & Policy
1617 JFK Boulevard, Suite 800
Philadelphia, PA 19103
(215) 557-7112

Gerald J. Williams, Esquire
Williams Cuker & Berezofsky
1617 JFK Boulevard, Suite 800
Philadelphia, PA 19103
(215) 557-0099

Date: January 10, 2003

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, in their own right and as personal representatives of the ESTATE OF RYAN K. SCHORR,<br><br>Plaintiffs<br><br>v.<br><br>BOROUGH OF LEMOYNE et al.,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>1:01-0930<br><br>(KANE, D.J.)<br>(MANNION, M.J.) |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAJISTRATE JUDGE

### INTRODUCTION

Currently before this Court are plaintiffs' objections to the Report and Recommendation of Magistrate Judge Mannion. Plaintiffs object only to that portion of the report recommending that "[b]ecause the plaintiffs have failed to sufficiently allege a Title II [of the ADA] cause of action under either the wrongful arrest or reasonable accommodation theory, the defendants' motion to dismiss Count V of the plaintiffs' complaint [against defendant police commission] should be granted." See Report and Recommendation at 16.

**ARGUMENT**

The report and recommendation errs by viewing Title II violations as arising in only two limited circumstances; violations in the course of an arrest, and the failure to accommodate. Here, plaintiffs' ADA claim arises not from a wrongful arrest or a failure to accommodate, but from the Commission's refusal to modify its policies, practices and procedures to ensure that its police officers were competent to execute "302" warrants without creating the tragic situation that marks this case.

Today's police are involved in many situations that do not involve an arrest. See e.g., Calloway v. Boro of Glassboro et al., 89 F. Supp. 2d 543, 555 (Dist. Ct. N.J. 2000) (recognizing broad interpretation of the ADA to include day to day activities of police department). These include response to individuals threatening suicide, response to emergency "911" medical calls, response to domestic disturbances, and as in this case, response to "302" involuntary commitment warrants. These encounters often times involve people with mental illness and are clearly covered by the ADA.

Title II of the ADA requires that public entities such as defendant police commission "modify policies, practices, or procedures" to ensure that individuals with disabilities are not discriminated against. 42 U.S.C. § 12132. The Department of Justice (DOJ) regulations interpreting Title II

2

emphasize that "the obligation to modify policies, practices, or procedures . . . require[s] [law enforcement] to make appropriate efforts to determine whether perceived strange or disruptive behavior or unconsciousness is the result of a disability." 28 C.F.R. § 35.130. Courts have recognized that where the failure to adequately train police officers results in discrimination, this amounts to a violation of the affirmative obligation to modify policies, practices and procedures. See e.g., Lewis v. Truitt, 960 F. supp. 175, 178-79 (S.D. In. 1997) (quoting House Judiciary Committee Report on the ADA: "[i]n order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. . . . Discriminatory treatment based on disability can be avoided by proper training."); Jackson v. Town of Sanford et al., 1994 U.S. Dist. LEXIS 15367 at *22-23 (Dist. Ct. ME 1994).

It is well recognized that adequate police training is an integral part of ensuring that police officers are able to appropriately respond to the needs of individuals with mental and emotional disabilities. See e.g., "Taking Emotionally Disturbed Persons Into Custody", Professor Michael Avery (March 23, 2000) (recognizing that "sophisticated training in how to respond to emotionally disturbed persons has been available to the police community for more than twenty years. Unfortunately, the actual training afforded to

officers is often incomplete or ineffective. . . ." (citations omitted)). See Exhibit A, attached hereto. Despite this recognition and the requirements of the ADA, it is beyond dispute that, in this case, defendant commission *failed to provide its officers with any such training.* It should also be noted that as early as 1995, the Municipal Police Officers Education and Training Commission (MPOETC), recognized the need to include in its police training curriculum a section on handling individuals who are "mentally ill". See Exhibit B attached hereto. Thus, the lack of adequate training and its impact for persons with mental disabilities has long been recognized in Pennsylvania. The lack of training is compounded by the fact that there were resources in the county to help the officers' respond to Ryan Schorr, which the commission had chosen to ignore for some time.

When defendant commission was called to respond to Ryan Schorr's home, the officers were aware that they were being asked to execute a "302" involuntary commitment warrant. Ryan Schorr was not a criminal suspect. Defendant argues, and the report and recommendation agrees, that plaintiffs' ADA claim must fail because, where an individual with a disability is engaged in unlawful conduct, he is not entitled to accommodation. This argument misses the mark for several reasons. First, the court must consider the "totality of circumstances" when addressing the commission's liability.

4

This approach is well recognized when considering whether proper training could have prevented discrimination in violation of the ADA. See Wright v. City of New York et al., 2001 U.S. Dist. Ct. LEXIS 8923 (SD NY 2001) (citing Bates v. Chesterfield County et al., 216 F.3d 367, 373 (4th Cir. 2000). Second, when the "totality of circumstances" is considered, it is obvious that the commission's failure to train or offer its officers use of any existing resources, were the reasons the situation escalated to the point where a violent confrontation ensued, and the officers only way out was to use lethal force. Quite simply, their actions were no different than an officer aggressively approaching a person threatening suicide or restraining a person having an epileptic seizure. As with these examples, Ryan's death could easily have been avoided had the commission trained its officers or used other county resources to the encounter with him.

In recommending dismissal of plaintiffs' ADA claim, the report and recommendation focuses exclusively on two cases involving the need for accommodation in the course of an arrest, and police conduct during an arrest. See Report and Recommendation at 13-16 (citing Gohier v. Enright, 186 F.3d 1216 (10th Cir. 1999); Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000)). Simply put, this focus is misplaced because the police *did not approach Ryan Schorr in the context of an arrest.* Further, this case law

cannot be used to support the conclusion that Title II does not apply to the situation faced by defendant's officers because it is *applicable only in those few instances where a person with mental illness is behaving in a violent manner **before** the police arrive on the scene.*

The Fifth Circuit's decision in Hainze involved an individual with depression who was carrying a knife in a convenience store parking lot and threatening "suicide by cop". 207 F.3d at 800. In deciding Hainze, the court relied upon the Tenth Circuit's decision in Gohier v. Enright, which involved an individual with paranoid schizophrenia who the police believed was swinging a knife when approached by them. 186 F. 3d 1216, 1220 (10th Cir. 1999). In Hainze, the court focused on the plaintiff's conduct and determined that it was his unlawful activity of wielding a knife that denied him the benefits of mental health services, and not the county's failure to train its officers to respond to the needs of individuals with mental illness. See Hainze, 207 F.3d at 800-01 (5th Cir. 2000).

Unlike the plaintiff in Hainze, when the officers initially arrived on the scene, Ryan Schorr was not behaving in a threatening or aggressive manner. To the contrary, he was alone in his apartment when officers Berresford and Hart entered unannounced through a sliding glass door. The officers proceeded upstairs where they found Ryan in the doorway of his

6

bedroom, wearing only a long coat or robe. He was not carrying a weapon or threatening the officers. Similarly, there is no evidence to suggest that Mr. Schorr had any history of violent or aggressive behavior in the past. *The aggressive and confrontational approach of the police officers* provoked the change in his behavior. See Plaintiffs' First Amended Complaint ¶¶ 42-46.

Finally, unlike the situation in Hainze, there is no evidence to suggest that Ryan Schorr was threatening the safety of the community or the individual officers upon their arrival. To the contrary, Ryan Schorr was inside his own apartment when the police arrived, and he was not armed. The situation faced by defendant's officers was not the type of "on the street" incident contemplated by the Hainze Court. Id at 801. Here, defendant's own failure to meet its obligations under the ADA, and *not* conduct by Mr. Schorr led to his death. Accordingly, the Magistrate's Recommendation to dismiss plaintiffs' ADA and claim must be set aside, and the motion to dismiss Count V must be denied.

## CONCLUSION

For all of the above reasons, plaintiffs request that this Court set aside the portion of the Report and Recommendation of the Magistrate Judge recommending dismissal of Count V of their complaint against defendant

7

police commission, and that defendant's motion to dismiss count V be denied.

        Respectfully submitted,

        */s/ Jamie C. Ray*
        STEPHEN S. PENNINGTON, ESQUIRE
        JAMIE C. RAY, ESQUIRE

        CENTER FOR DISABILITY LAW & POLICY
        1617 J.F.K. Blvd., Suite 800
        Philadelphia, PA  19103
        (215) 557-7112

        GERALD J. WILLIAMS, ESQUIRE
        WILLIAMS, CUKER & BEREZOFSKY
        1617 J.F.K. Blvd., Suite 800
        Philadelphia, PA  19103
        (215) 557-0099

        Attorneys for Plaintiffs

DATED: January 10, 2003

75 East Derry Road • Hershey, PA  17033              (717) 533-5987  or  (800) 342-0858



126   03/99-11
      12/14/00

# BASIC TRAINING CURRICULUM FOR PENNSYLVANIA POLICE PATROL OFFICERS



BTM - 13 (February, 1995)

## STUDENT STUDY GUIDE

Topic Area: C.   Handling the Mentally Ill (3 hours)

Description of the Topic Area

Mental or emotional illness is a disorder that affects the way a person thinks, act, feels, and behaves. Police officers frequently have to handle persons who are mentally ill because their abnormal conduct may be illegal, disruptive, or dangerous to themselves or others. The behavior may be merely an eccentric nuisance or it could be life-threatening. This topic area is devoted to familiarizing you with various forms of mental illness and suggesting methods of handling those afflicted with mental illness that you may encounter.

Learning and Task Performance Objectives

At the conclusion of this section of the training program you will be able to:
1. List some of the mental illness first evident in childhood.
2. List some of mental illness that are organic in origin.
3. Distinguish between anxiety disorders, compulsive disorders, conversion disorders, dis-associative disorders, and impulse control disorders
4. Describe schizophrenia.
5. Describe paranoia.
6. Describe psychosis.
7. Describe Bipolar Disease; a manic period, and a depressive period
8. List medications frequently taken by those suffering from a mental illness.
9. Demonstrate the proper approach and methods of establishing rapport with those suffering from a mental illness.
10. Give four definitions of mental illness.
11. Tell what role the police may play in an involuntary commitment.
12. Describe the Mcnaghten Rules.
13. Discuss the meaning and purpose of the Guilty But Mentally Ill Verdict.
14. Describe signs that suggest that a person is mentally handicapped.
15. Describe methods of dealing with persons who are mentally handicapped.
16. List diseases or conditions which may be mistaken as mental illness.

### Outline

C. Handling the Mentally Ill
   1. Introduction to Mental Illness
   2. The role of the police

References

Ausarnot, G. Applied Psychology in Police Training - Police Operations and Human Behavior. International Criminal Police Review, vol 36, no 347 (Apr 1981).

Beigel, A. and Herwosil. Understanding Human Behavior for Affective Police Work. New York, NY: Basic books, 1982.

Bonovitz, J.C. and J.S. Bonovitz. "Diversion of the Mentally Ill into the Criminal Justice System - The Police Intervention Perspective." American Journal of Psychiatry. Vol 138, No 7 (July 1981).

Forget, C.A. " Mentally Retarded Person in the Criminal Justice System." Journal of Offender Counseling, Services, and Rehabilitation. Vol 4, No 3 (Spring 1980).

Morris, N. "Criminal Responsibility of the Mentally Ill." Syracuse Law Review. Vol 33, No 2 (Spring 1982).

TAKING EMOTIONALLY DISTURBED PERSONS INTO CUSTODY

Prof. Michael Avery
Suffolk Law School
March 23, 2000

Police officers are often required to respond to a report that a mentally ill or emotionally disturbed person is creating a disturbance or requires assistance. These encounters are high-risk situations that constitute critical incidents for the police. Officers' attempts to take emotionally disturbed persons into custody all too frequently conclude with a tragic outcome. The following materials focus on some of the issues involved in these cases.[1]

Police Training Materials

Sophisticated training in how to respond to emotionally disturbed persons has been available to the police community for more than twenty years. Unfortunately, the actual training afforded to officers is often incomplete or ineffective. For available resources, see, e.g.: Police Executive Research Forum, "Special Care: Improving the Police Response to the Mentally Disabled," 1986; "The Mentally Ill Offender," *The Police Chief,* April, 1993; "Safely Handling Diminished Capacity Persons," *Police Marksman*, Jan/Feb 1992; "Abnormal Behavior," International Association of Chiefs of Police, 1979; "Police Handling of Emotionally Disturbed People," FBI Law Enforcement Bulletin, Jan, 1971; "Policy and Procedure in Handling the Mentally Ill," Massachussetts Police Institute; "Mental Case Procedures," San Diego Police Department Procedures.

---

[1] The following materials are from a work in progress. The citations are not intended to be exhaustive, but rather illustrative of the types of problems encountered.

# **CERTIFICATE OF SERVICE**

I, Jamie C. Ray, Esquire hereby certify that a true and correct copy of the foregoing Plaintiff's Objection to the Report and Recommendation of the Magistrate Judge, and Plaintiff's Brief in Support thereto was served this date by United States Mail postage paid as follows:

Magistrate Judge Mannion
US District Court
235 North Washington Avenue
P.O. Box 1148
Scranton, PA 18501

Gregory J. Hauck, Esquire
Montgomery, McCracken, Walker
 & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

John F. Yaninek, Esquire
Mette, Evans & Woodside
3401 North Front Street
P.O. Box 5950
Harrisburg, PA 17110

WILLIAMS CUKER & BEREZOFSKY

*/s/ Jamie C. Ray*
JAMIE C. RAY, ESQUIRE

Date:   January 10, 2003