IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, In their own right and as personal representatives of the Estate of RYAN K. SCHORR,<br><br>Plaintiffs,<br><br>vs.<br><br>WEST SHORE REGIONAL POLICE COMMISSION, HOWARD DOUGHERTY, CUMBERLAND COUNTY, ROBERT GORIL and HOLY SPIRIT HOSPITAL,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>No. 1:CV-01-0930<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

FILED
HARRISBURG, PA
JAN 2 4 2003
MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

**DEFENDANT WEST SHORE REGIONAL POLICE COMMISSION'S BRIEF IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant West Shore Regional Police Commission (the "West Shore Police Department") submits the following Brief in Opposition to Plaintiffs' Objections to the Report and Recommendation of Magistrate Judge Mannion dated December 27, 2002.

I. **INTRODUCTION**

Plaintiffs object to Magistrate Judge Mannion's Report and Recommendation to dismiss their claim under the Americans with Disabilities Act ("ADA"). Courts have uniformly relied on two theories – the "reasonable accommodation" theory and the "wrongful arrest" theory – for analyzing claims that a police officer violated the ADA during the course of an arrest. For the most part, these courts have rejected the notion that a disabled person can recover under the ADA based on police conduct during an arrest.

Plaintiffs contend that their ADA claim should not be analyzed under the rubric of either of these two theories and propose their own theory of liability. Curiously, Plaintiffs fail to cite any legal authorities that have adopted their proposed theory. Moreover, while they theorize that a cognizable claim can be made out under the ADA by simply alleging that a police officer acted unreasonably under the totality of the circumstances, they fail to point to any such allegation in their Amended Complaint ("Complaint"). This is no doubt because of their inability to do so in light of the fact that a Grand Jury has investigated the shooting incident at issue and has concluded that the use of deadly force by police was entirely justified. See Grand Jury Report, at 35.[1]

---

[1] In ruling on a motion to dismiss, a district court may take judicial notice of matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000). Since the Grand Jury Report has been "filed as a public record with the Court of Common Pleas of Cumberland County," see

Because they lack a viable theory of liability that is supported by the allegations of their Complaint, Plaintiffs' ADA claim is legally insufficient. Accordingly, this Court should overrule Plaintiffs' objections and adopt Magistrate Judge Mannion's recommendation to dismiss Plaintiffs' ADA claim against the West Shore Police Department.

## II. BACKGROUND

On November 18, 2000, Officers Gary Berresford and Harry Hart of the West Shore Police Department were dispatched to execute an involuntary commitment order on Ryan Schorr pursuant to section 302 of the Pennsylvania Mental Health Procedures Act.[2] See Compl. ¶ 21; Grand Jury Report, at 10-11. After obtaining the order and corresponding warrant, Officers Berresford and Hart went to decedent's house and transported him to Holy Spirit Hospital, where he was placed in a high security room. See Compl. ¶ 21; Grand Jury Report, at 11. When a crisis intervention worker entered decedent's hospital room, he rushed past her and left the hospital. See Compl. ¶ 23.

---

Grand Jury Report, at 1, this Court can consider it for purposes of ruling on the instant motion. A copy of the Grand Jury Report is attached to Exhibit "B" of the motion to dismiss that was filed by the West Shore Police Department and Chief Howard Dougherty.

[2] Section 302 of the Pennsylvania Mental Procedures Act is codified at 50 Pa.C.SA. § 302.

Approximately two hours later, decedent returned to his home. See Compl. ¶ 24. Officers Berresford and Hart were contacted and instructed to return decedent to the hospital. See Compl. ¶ 25; Grand Jury Report, at 14, 17. The police officers entered decedent's house through a sliding glass door and found decedent in the doorway of his bedroom dressed only in a long robe. See Compl. ¶¶ 29-30. Immediately upon entering the bedroom, decedent attacked Officer Berresford and wrestled the officer's gun from his holster. See Grand Jury Report, at 19. Decedent then shot off Officer Berresford's finger and engaged in a series of assaults on both officers, using as weapons a knife, an air rifle and metal pots. See Grand Jury Report, at 19-25. Ultimately, Officer Hart fired his service revolver and killed decedent. See Compl. ¶¶ 31-33.

A Grand Jury investigated the shooting death of decedent. After hearing testimony from 44 witnesses and reviewing 180 exhibits, the Grand Jury concluded that Officer Hart exercised sound judgment and "was justified in using deadly force upon Ryan Schorr because it was necessary to use such force to prevent death or serious bodily injury to himself and/or Officer Berresford when Ryan Schorr failed to desist from his aggravated, violent attack." See Grand Jury Report, at 35.

On May 25, 2001, the parents of decedent commenced this instant lawsuit. In their Complaint, Plaintiffs asserted claims against the West Shore Police

-4-

Department and Chief Howard Dougherty under 42 U.S.C. § 1983, the ADA, the Rehabilitation Act and Pennsylvania's Survival and Wrongful Death Acts.[3]  On October 5, 2001, Defendants West Shore Police Department and Chief Howard Dougherty filed a motion to dismiss each of the claims raised in Plaintiffs' Complaint.

On September 5, 2002, Plaintiffs voluntarily dismissed their claim under the Rehabilitation Act.  On December 27, 2002, Magistrate Judge Mannion issued a Report and Recommendation, in which he recommended dismissal of the remaining claims against the West Shore Police Department and Chief Howard Dougherty, except for the claim under 42 U.S.C. § 1983.

On or about January 10, 2003, Plaintiffs filed objections to Magistrate Judge Mannion's Report and Recommendation to the extent that it recommended dismissal of Plaintiffs' ADA claim against the West Shore Police Department.  Plaintiffs have not challenged the recommendation to dismiss the claims under Pennsylvania's Survival and Wrongful Death Acts or the recommendation to dismiss the ADA claim against Chief Howard Dougherty.

---

[3] Plaintiffs also named Cumberland County and Holy Spirit Hospital as defendants.  The claims against those defendants are not discussed herein.

### III. ARGUMENT

#### A. Magistrate Judge Mannion Correctly Decided That Plaintiffs Failed to State a Claim Under the ADA

Title II of the ADA provides, in pertinent part, as follows:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Federal courts have addressed Title II claims arising from arrests under two different theories. Hainze v. Richards, 207 F.3d 795, 800 (5th Cir. 2000); Gohier v. Enright, 186 F.3d 1216, 1220 (10th Cir. 1999). The first is the "reasonable accommodation" theory. A person with a disability may have a claim under this theory when an officer fails to accommodate his disability such that he is "excluded from participation in or . . . denied the benefits of the services, programs or activities of a public entity." See 42 U.S.C. § 12132.

The second theory is the "wrongful arrest" theory. This theory derives from the portion of the ADA which outlaws a person with a disability from being "subjected to discrimination" by a public entity. See 42 U.S.C. § 12132. To state a claim for relief under the wrongful arrest theory, a person with a disability must establish that a police officer wrongly arrested him because the officer misperceived the effects of the disability as criminal activity. Hainze, 207 F.3d at 800; Gohier, 186 F.3d at 1220.

Plaintiffs contend that "[t]he report and recommendation errs by viewing Title II violations as arising in only two limited circumstances; violations in the course of an arrest, and the failure to accommodate." See Pls. Br. at 2. Plaintiffs maintain that their ADA claim does not derive from either the reasonable accommodation theory or the wrongful arrest theory, but rather under some third theory, which they claim allows for recovery based upon the West Shore Police Department's "refusal to modify its policies, practices and procedures to ensure that its police officers were competent to execute '302' warrants." See id.[4] Plaintiffs' contention is misplaced.

1. **Plaintiffs Cannot Establish a Cognizable Claim Under the ADA Based on an Allegation that Decedent Was Denied the Benefits of Police Training**

As noted above, Title II of the ADA precludes a public entity from denying a disabled person the benefits of its "services, programs, or activities." 42 U.S.C. § 12132. Under their contrived third theory, Plaintiffs contend that the West Shore Police Department violated the ADA by denying decedent the benefits of adequate police training. Plaintiffs theorize that the West Shore Police Department failed to provide its officers with any training that would have ensured that its officers were

---

[4] Citing 42 U.S.C. § 12132, Plaintiffs state that "Title II of the ADA requires that public entities such as defendant police commission 'modify policies, practices, or procedures' to ensure that individuals with disabilities are not discriminated against." See Pls. Br. at 2. Plaintiffs suggestion that 42 U.S.C. § 12132 requires public entities to "modify policies, practices, or procedures" is a blatant misstatement of the plain language of that statute.

-7-

"able to appropriately respond to the needs of individuals with mental and emotional disabilities." See Pls. Br. at 3.

Despite Plaintiffs' insistence that they have stated a claim for relief under what they believe to be a novel theory of liability, the Fifth Circuit in Hainze explicitly rejected this theory as one which can be used to state a cognizable claim under the ADA. The Fifth Circuit explained:

> Hainze first claims he was denied the benefits and protections of Williamson County's mental health training provided to its deputies when, in contravention of that training, [Deputy] Allison used excessive and deadly force to restrain him. . . . We must conclude that this argument fails. A necessary prerequisite to a successful claim under Title II is that a disabled person be denied the benefits of a service, program or activity by the public entity that provides such service, program or activity. Hainze was not denied the benefits and protections of Williamson County's mental health training by the County, Sheriff Richards, or the officers. Rather, Hainze's assault of Allison with a deadly weapon denied him the benefits of that program.

Hainze, 207 F.3d at 800-01.

In this case, the events which led to decedent's allegedly being denied of the "services, programs, or activities" of the West Shore Police Department began when Officers Berresford and Hart were contacted by the 911 operator and instructed to return decedent to the hospital. See Compl. ¶ 25; Grand Jury Report, at 14, 17. Immediately upon entering decedent's bedroom, decedent "attacked" Officer Berresford. See Grand Jury Report, at 19. During the assault, decedent: (1) gained control of Officer Berresford's gun and shot off Officer Berresford's left

ring finger; (2) attempted to stab the officers with a knife; (3) struck them with an air rifle; and (4) later struck the officers with two large metal pots. See Grand Jury Report, at 19-25. It was only after the officers were ambushed by decedent, that Officer Hart was forced to resort to the use of deadly force.

As in Hainze, decedent was not denied the benefits of the West Shore Police Department's training by Officers Berresford and Hart. Rather, it was decedent's own attack of Officer Berresford and Hart that caused him to be denied of those benefits. Accordingly, Plaintiffs have failed to make out a claim for relief under the ADA.[5]

    2.    **The "Totality of the Circumstances" Is Not a Consideration To Be Made by a Court Faced with a Motion to Dismiss**

Plaintiffs also argue that the Report and Recommendation "misses the mark" because Magistrate Judge Mannion failed to consider the "totality of the circumstances." See Pls. Br. at 4. In support of this contention, Plaintiffs cite the cases of Anthony v. City of New York, No. 00 Civ. 4688, 2001 WL 741743

---

[5] Attached to Plaintiffs' brief at Exhibits A & B are documents that discuss procedures for dealing with disabled persons. As it is an elementary principle of law that a motion to dismiss is decided based upon the allegations of the Complaint (and matters of public record as discussed in footnote 1), see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997), this Court should completely disregard those two attachments.

(S.D.N.Y. July 2, 2001) and <u>Bates v. Chesterfield County</u>, 216 F.3d 367 (4th Cir. 2000)).[6]

In making this argument, Plaintiffs misapprehend the holdings of <u>Anthony</u> and <u>Bates</u>. In each of those cases, the plaintiffs had brought claims under both the Fourth Amendment and the ADA. Faced with motions for summary judgment, the courts dismissed the Fourth Amendment claims on the ground that the conduct of the officers was objectively reasonable. The courts then reasoned that since the officers had not acted unreasonably, the plaintiffs' ADA claim also had to be dismissed. <u>Anthony</u>, 2001 741743, at *11; <u>Bates</u>, 216 F.3d at 373. Indeed, the Fourth Circuit in <u>Bates</u> explained:

> We need not undertake an independent ADA inquiry in this case because our Fourth Amendment scrutiny has already accounted for all the situation's circumstances. . . . Here, we have concluded that under all the circumstances the officers' actions were objectively reasonable. . . . Thus the stop, the use of force, and the arrest of Bates were not by reason of Bates' disability, but because of Bates' objectively verifiable misconduct. Such reasonable police behavior is not discrimination. As a result, there has been no ADA violation.

216 F.3d at 373.

Unlike in <u>Anthony</u> and <u>Bates</u>, pending before this Court is a motion to dismiss. The appropriate inquiry for this Court is whether Plaintiffs' Complaint pleads the elements of a legally recognizable cause of action under the ADA. <u>See</u>

---

[6] In their brief, Plaintiffs erroneously refer to the <u>Anthony</u> case as <u>Wright v. City of New York</u>. <u>See</u> Pl. Mem. at 5.

-10-

In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1420. Any inquiry into whether Officers Berresford and Hart acted reasonably under the "totality of the circumstances" is premature and should be reserved until summary judgment.

Even if Plaintiffs' were arguing that they simply needed to plead unreasonable conduct on the part of the officers, Plaintiffs' ADA claim could still not survive dismissal. Plaintiffs' Complaint is completely devoid of any allegation that Officers Berresford and Hart acted unreasonably. The absence of such an allegation is not surprising in light of the fact that decedent was shot only <u>after</u> he engaged in a savage attack of the officers. Here, Plaintiffs have not – and cannot – assert that the amount of force used by the officers was objectively unreasonable. Without an allegation of unreasonable conduct, Plaintiffs' Complaint does not even satisfy the pleading requirements of the theory of liability they invented.

**B.    Plaintiffs Theory of Liability Is Inconsistent with the Fifth Circuit's Holding in *Hainze***

Plaintiffs spend the last three pages of their brief trying to reconcile their proposed theory of liability with the oft-cited case of <u>Hainze v. Richards</u>. <u>See</u> Pls. Br. at 5-7. Plaintiffs maintain that <u>Hainze</u> is distinguishable because the police officers in this case "did not approach Ryan Schorr in the context of an arrest." <u>See</u> Pls. Br. at 5. The Fifth Circuit in <u>Hainze</u> made clear, however, that its holding applied to police conduct beyond just that of arrests. Indeed, the Fifth Circuit held that Title II of the ADA "does not apply to an officer's <u>on-the-street responses to</u>

reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities." See 207 F.3d at 801 (emphasis added).[7]

Plaintiffs also contend that Hainze is different from this case because, unlike the plaintiff in Hainze, decedent in this case was not behaving in a violent manner before police arrived on the scene. See Pls. Br at 6. A reading of Hainze shows, once again, that that decision is not so limited. The Hainze Court held that the ADA does not apply to police conduct "prior to the officer's securing the scene and ensuring that there is no threat to human life." See 207 F.3d at 800. Thus, according to Hainze, the ADA would not have become applicable in this case until it had been determined that the area encompassing decedent's house was safe.

Despite Plaintiffs' attempts to differentiate Hainze from this case, the two cases are strikingly similar. Indeed, that decision makes clear exactly what Magistrate Mannion found in his Report and Recommendation – that Plaintiffs cannot make out a claim for relief against the West Shore Police Department under the ADA.

---

[7] Moreover, Plaintiffs' suggestion that there is a difference between an arrest and an involuntary commitment is really just a matter of semantics. See Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992) (holding that "[a] civil commitment is a seizure"); In re R.D., 739 A.2d 548, 554 (Pa. Super. 1999) (holding that an "involuntary commitment of mentally ill persons constitutes deprivation of liberty").

## IV. CONCLUSION

For the foregoing reasons, and the reasons stated in its brief and reply brief in support of its motion to dismiss the complaint, the West Shore Police Department respectfully requests that this Court overrule Plaintiffs' objections and grant its motion to dismiss the Plaintiffs' ADA claim for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated: January 22, 2002

_Gregory J. Hauck_
David J. MacMain  (Atty. I.D. No. 59320)
Gregory J. Hauck  (Atty. I.D. No. 82958)
MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109-1099
(215) 772-1500

Attorneys for Defendants West Shore Regional Police Commission and Howard Dougherty

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Brief in Opposition to Plaintiffs' Objections to the Report and Recommendation of the Magistrate Judge to be served, via first-class mail, postage prepaid, upon each of the following persons:

>Gerald J. Williams, Esquire
>Williams, Cuker & Berezofsky
>One Penn Center
>1617 JFK Boulevard, Suite 800
>Philadelphia, PA  19103-1895
>Attorney for Plaintiffs

>John F. Yaninek
>Mette, Evans & Woodside
>3401 North Front Street
>P.O. Box 5950
>Harrisburg, PA  17110-0950
>Attorney for Cumberland County and
>Holy Spirit Hospital

Dated:  January 22, 2003          _____
                                   Gregory J. Hauck