## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH I. SCHORR and                    :
SUSAN SCHORR, In their own right and :
as personal representatives of the     :
Estate of Ryan K. Schorr,              :
        Plaintiffs           :
                             :
      v.                       :    CIVIL ACTION NO. 1:CV-01-930
                             :
                             :    (Judge Kane)
BOROUGH OF LEMOYNE;                    :
BOROUGH OF WORMLEYSBURG;               :
WEST SHORE REGIONAL POLICE             :
DEPT.; HOWARD DOUGHERTY,               :
Chief, West Shore Regional Police      :
Dept.; CUMBERLAND COUNTY;              :
ROBERT GORIL, Executive Director,      :
Cumberland County Mental Health/       :
Mental Retardation Dept.; HOLY         :
SPIRIT HOSPITAL, and WEST              :
SHORE REGIONAL POLICE                  :
COMMISSION,                            :
        Defendants           :

**FILED**
HARRISBURG

ᴬᴮ 1 0 2003

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

### MEMORANDUM AND ORDER

Before this Court are motions to dismiss filed by (1) West Shore Regional Police

Commission and Police Chief Howard Dougherty (Doc. No. 34), and (2) Cumberland County

(Doc. No. 36); the Report and Recommendation of Magistrate Judge Mannion (Doc. No. 63);

and Plaintiffs' objections thereto (Doc. No. 64). For the reasons discussed below, this Court will

adopt the Report and Recommendation in part and sustain the Plaintiffs' objections.

### I.    Factual Background

This Court adopts the factual background as found by the Magistrate Judge as follows:

Plaintiffs' decedent, Ryan K. Schorr, ("Schorr"), suffered from bipolar disorder.
Schorr's condition deteriorated shortly before November 18, 2000, and his
roommate and family applied for his involuntary committal pursuant to § 302 of

the Pennsylvania Mental Health Procedures Act. A crisis intervention worker employed by Holy Spirit Hospital took and evaluated the application, and caused an order for involuntary commitment to be issued. The worker then contacted the Cumberland County Control Unit and arranged for West Shore Regional Police Department officers to detain Schorr pursuant to the commitment order and related warrant.

Two officers went to Schorr's apartment and took him to Holy Spirit Hospital, where he was placed in a "high security" room in the emergency department to wait for an evaluation. When a crisis intervention worker entered the room, Schorr pushed past the worker and escaped from custody. Schorr's family called his apartment and, finding him there, called the police to report his whereabouts. Two officers were again dispatched to Schorr's apartment to take him back into custody and to Holy Spirit Hospital. A violent confrontation ensued and Schorr was shot and killed by one of the officers.

(Doc. No. 63 at 1-2.)

## II.    Scope of Review

Plaintiffs, Keith and Susan Schorr, filed this civil action against several Defendants as a result of the events surrounding the death of their son, Ryan Schorr. The remaining Defendants are West Shore Regional Police Commission ("Commission"), Howard Dougherty, Chief of West Shore Regional Police Department ("Dougherty"), Cumberland County, and Holy Spirit Hospital. The Commission and Dougherty moved to dismiss Counts I, V, VI, and VII of Plaintiffs' complaint; Cumberland County moved to dismiss Counts IV, V, VI, and VII of Plaintiffs' complaint. The Magistrate recommends denying the Commission and Dougherty's motion to dismiss Count I of the complaint and granting the motions to dismiss Counts IV, V, VI, and VII of the complaint against all remaining Defendants.

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Plaintiffs object only

2

to the dismissal of Count V of the amended complaint against the Commission. Defendants have not filed objections to the Report and Recommendation. Additionally, Plaintiffs have since filed, and this Court has granted, a motion to dismiss Counts VI and VII against all moving Defendants, Count IV against Cumberland County, and Count V against Dougherty and Cumberland County. This Court will therefore limit its review to those portions of the Magistrate's Report and Recommendation reviewing Count I as to the Commission and Dougherty and Count V as to the Commission.

## III.    **Discussion**

### A.    **Plaintiffs' § 1983 Claim**

Plaintiffs bring Count I of their complaint against the Commission and Dougherty pursuant to 42 U.S.C. § 1983, alleging unconstitutional policies and procedures for dealing with mentally ill persons and unconstitutional failure to train police officers to peacefully deal with mentally ill persons. The Commission and Dougherty moved for dismissal of Count I of Plaintiffs' complaint, arguing that it fails to allege a deprivation of Schorr's constitutional rights, and characterizing it as a fourth amendment excessive force claim. However, Plaintiffs' claim is more properly characterized as a fourteenth amendment substantive due process claim.

Therefore, the Magistrate properly concluded that Plaintiffs have stated a § 1983 claim against the Commission and Dougherty. See City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that the inadequacy of police training may serve as the basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"); Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994) (substantive due process case for failure to train arising out of police pursuit could be brought even where there was no allegation of constitutional violations by individual police officers). This Court will

3

adopt the Report and Recommendation on this ground and deny Defendants' motion to dismiss Count I of the complaint.

**B.    Plaintiffs' ADA and Rehabilitation Act Claims**

Plaintiffs bring Count V against the Commission pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 (2003) ("ADA" or "Title II"). The Magistrate recommends dismissing this claim, to which Plaintiffs object. In Count V of their complaint, Plaintiffs allege that "Defendants violated Ryan Schorr's federally guaranteed right to be free from discrimination on the basis of disability by failing to make reasonable modifications to their policies, practices and procedure to ensure that his needs as an individual with a disability would be met." (Doc. No. 24 at 13.) Defendants do not appear to contest whether Schorr qualifies as a disabled individual under the ADA, but only whether the ADA applies to the facts of this case. Defendants characterize the claim as alleging failure to accommodate "while making an arrest" and argue that arrests "do not fall within the ambit of the ADA." (Doc. No. 35 at 9-11.)

This Court's analysis of whether Plaintiffs can state a claim under the ADA begins with the statute itself. See Watt v. Alaska, 451 U.S. 259, 265 (1981) ("the starting point in every case involving construction of a statute is the language itself") (citation omitted). Title II of the ADA provides, in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although the ADA does not define "services, programs, or activities," § 504 of the Rehabilitation Act[1] specifies that "'program or activity' means all of the operations of . . . a

_____

[1] Title II of the ADA must be interpreted in a manner consistent with Section 504 of the Rehabilitation Act. 42 U.S.C. §§ 12134(b) & 12201(a). Therefore, the law developed under the

department, agency, special purpose district, or other instrumentality of a State or of a local government[.]" 29 U.S.C. § 794(b) (emphasis added).

On its face, by guaranteeing disabled persons full access to all of the "services, programs, or activities of a public entity," the Act appears to provide protection from a very broad range of discriminatory treatment. Although to the lay reader this language may suggest only commonly available and publicly shared accommodations such as parks, playgrounds, and transportation, the Act in no way limits the terms "services, programs, or activities," and appears to include all core functions of government. Among the most basic of these functions is the lawful exercise of police powers, including the appropriate use of force by government officials acting under color of law. Plaintiffs allege that these essential government functions are activities covered by the ADA and that the failure of Defendants to properly train the police for peaceful encounters with disabled persons caused decedent Schorr to be discriminated against and excluded from these government services. Nothing in the language of the statute suggests that the ADA does not extend to this type of governmental activity.

Indeed, in enacting the ADA, Congress found that "individuals with disabilities continually encounter various forms of discrimination, including . . . failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5). Congress stated that one purpose of the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Thus, the ADA is a remedial statute, designed to eliminate discrimination against the disabled in all facets of society. As a remedial statute, it must be broadly construed to effectuate its

---

Rehabilitation Act is applicable to Title II claims. <u>Chisolm v. McManimon</u>, 275 F.3d 315, 324 n.9 (3d Cir. 2001).

purposes. Tcherepnin v. Knight, 389 U.S. 332, 335 (1967).

Other legislative materials provide further support for a broad statutory interpretation.[2] The regulations to Title II of the ADA state that the statute "applies to all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a). In the preamble to the regulations, the Department of Justice explains that this broad language is comparable to the coverage under § 504 of the Rehabilitation Act, such that Title II "applies to anything a public entity does." 56 Fed. Reg. 35694-01, 35696 (1991), section-by-section analysis codified at 28 C.F.R. pt. 35, app. A (2003). The preamble, discussing law enforcement activities specifically, further states that "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." Id. at 35703.

The legislative history of the ADA provides additional support for a broad interpretation encompassing Plaintiffs' claim. The House Judiciary Committee stated: "[i]n order to comply with the non-discrimination mandate, it is often necessary to provide training to public employees about disability. . . . discriminatory treatment based on disability can be avoided by proper training." H.R. Rep. No. 101-485, pt. III, at 50 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 473. The House Committee on Education and Labor stated, discussing Title II of the ADA: "[t]he Committee has chosen not to list all the types of actions that are included within the term 'discrimination', as was done in titles I and III, because this title essentially simply extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to all actions

---

[2]Department of Justice regulations and commentary accompanying the regulations should be given "controlling weight unless [they are] 'arbitrary, capricious, or manifestly contrary to the statute[.]'" See Yeskey, 118 F.3d at 171 (citing Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or., 515 U.S. 687 (1995) and Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994)).

of state and local governments." Id., pt. II, at 84, reprinted in 1990 U.S.C.C.A.N. 303, 367 (emphasis added). That Committee also noted: "Title II of the bill makes all activities of State and local governments subject to the types of prohibitions against discrimination against a qualified individual with a disability included in section 504 (nondiscrimination)." Id. at 151, reprinted in 1990 U.S.C.C.A.N. 303, 434 (emphasis added). In short, nothing in the statue, regulations, or legislative history suggests any exceptions to the Act for certain police activities or anything other than an interpretation that includes Plaintiffs' claim.

Although the Court of Appeals for the Third Circuit has not yet addressed the application of the statute to police activities and procedures, the Court has addressed the breadth of Title II in another context. In Yeskey v. Pennsylvania Department of Corrections, the Third Circuit held that the provisions of the ADA and Rehabilitation Acts prohibiting exclusion of disabled persons from government services, programs, and activities applies to state prisons. 118 F.3d 168 (3d Cir. 1997), aff'd, 524 U.S. 206 (1998). In making the determination, the Court analyzed the statutory, regulatory and ordinary definitions of "program" and "activity"[3] and concluded that the terms "were intended to be all-encompassing." Id. at 170-71. The Supreme Court unanimously affirmed the Third Circuit's holding in Yeskey, finding that "the statute's language unmistakably includes State prisons and prisoners within its coverage." Pa. Dept. of Corr. v. Yeskey, 524 U.S. 206, 209 (1998). The Court held that the Act "plainly covers state institutions without any exception that could cast the coverage of prisons into doubt" and that the text of the statute "provides no basis for distinguishing [prison] programs, services, and activities from those provided by public entities that are not prisons." Id. at 209-10 (emphasis in original). Finally,

---

[3]"Activity" is defined by Webster's Third New International Dictionary 22 (1986) as a "natural or normal function or operation." See Yeskey, 118 F.3d at 170.

7

the Court noted that "the fact that a statute can be applied in situations not expressly anticipated

by Congress does not demonstrate ambiguity. It demonstrates breadth." Id. at 212 (internal

quotation marks and citation omitted). This important precedential case serves as guidance to

this Court. The provision of the ADA at issue here has been interpreted as "all-encompassing,"

and "without any exception," suggesting that the facts of this case fit squarely within the statute

as interpreted by the Third Circuit and the Supreme Court.

Indeed, the Eight Circuit relied on the Supreme Court's decision in Yeskey to hold that

the ADA was applicable in the context of an arrest. Gorman v. Bartch, 152 F.3d 907 (8th Cir.

1998). In Gorman, an arrestee in a wheelchair sustained injuries after being transported in a

police van that was not equipped with wheelchair restraints. Id. at 910. The Gorman court

noted that a local police department falls "squarely within the statutory definition of 'public

entity'" and that the involuntariness of Plaintiff's arrest did not diminish his eligibility for

reasonable accommodations under the statue. Id. at 912 (citing Yeskey, 524 U.S. 206).

Other district courts have also found that a public entity violated the ADA by

discriminating against a disabled individual in its provision of services, activities, or programs

during the course of an arrest. See, e.g., Calloway v. Glassboro Dept. of Police, 89 F. Supp. 2d

543 (D.N.J. 2000) (finding ADA applicable to a situation where a deaf person was subjected to

police investigative questioning without the assistance of a qualified interpreter); Lewis v. Truitt,

960 F. Supp. 175, 178 (S.D. Ind. 1997) (ADA claim exists in an arrest situation where plaintiff

shows that he is disabled, that the arresting officers knew or should have known of the disability,

and the officers arrested plaintiff because of legal conduct related to his disability); Barber v.

Guay, 910 F. Supp. 790, 802 (D. Me. 1995) (plaintiff's claim "that he was denied proper police

protection and fair treatment due to his psychological and alcohol problems" during investigation

and arrest stated a valid cause of action under the ADA); Jackson v. Inhabitants of Sanford, 1994 WL 589617 (D. Me. Sept. 23, 1994) (calling the municipal defendant's contention that the ADA is inapplicable to arrests "plainly wrong" and holding that Title II of the ADA applied to Plaintiff's discriminatory arrest and failure to train claims).

The parties here have not addressed the Yeskey decision or the decisions from other courts that have allowed similar claims to proceed under the ADA. Rather, Plaintiffs, Defendants, and the Magistrate all seem to agree that this dispute is governed by the Fifth Circuit decision in Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000). Analyzing Plaintiffs' claim under Hainze and Gohier v. Enright, 186 F.3d 1216 (10th Cir. 1999), the Magistrate recommended dismissing Plaintiffs' ADA claim on the grounds that the ADA does not apply to actions taken by police officers during an arrest. (Doc. No. 63 at 13-15.)[4] Plaintiffs do not challenge the Hainze decision, but rather argue that the police encounter in this case was not an arrest controlled by the decision. Further, Plaintiffs argue that because the activity complained of, the refusal to modify practices and procedures to accommodate the disabled, occurred before the police encounter, application of the ADA in this case would not run afoul of Hainze.

Relying on Hainze, the Magistrate ruled that there are only two bases of recovery for police misconduct under the ADA and that neither applies here. The Magistrate stated that the "wrongful arrest" theory "is not applicable when the plaintiff's actions were unlawful at the time of the arrest." (Doc. No. 63 at 13 (citing Gohier, 186 F.3d at 1221)). The "reasonable

---

[4]Other courts have similarly held. See, e.g., Rosen v. Montgomery County Md., 121 F.3d 154 (4th Cir. 1997) (indicating doubt in dicta as to whether ADA would apply to arrest); Patrice v. Murphy, 43 F. Supp. 2d 1156 (W.D. Wash. 1999) (relying on Rosen to hold ADA inapplicable to arrests, at least in situation such as one presented, where in response to 911 call or where police witness crime).

accommodations" theory, the Magistrate ruled, "does not apply to the actions of officers while affecting an arrest." (Id. at 15 (citing Hainze, 207 F.3d at 801)). Even if this Court were to anticipate Hainze becoming the law of this Circuit, which it cannot do, the findings of the Magistrate still cannot be sustained. At this stage of the proceedings, it has not been established conclusively as a matter of fact or law that the police conduct in question constitutes an "arrest" or that Schorr's actions were unlawful. These are disputed issues and on a motion to dismiss, the facts must be taken in a light most favorable to Plaintiffs as the nonmoving party. See Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.1989).

The Hainze court was presented with a claim similar to the one here, that the defendant county "failed to reasonably accommodate [plaintiff's] disability by failing and refusing to adopt a policy protecting the well-being of [plaintiff] as a person with a mental illness in a mental health crisis situation," yet the court declined to specifically address it. 207 F.3d at 801 (internal quotation marks omitted). Rather, the court simply stated:

> Despite Hainze's claims, we hold that Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents. While the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public.

Id.

The Hainze rationale for disallowing ADA claims when the challenged conduct occurred during "exigent circumstances" does not apply here, and this Court believes that the Third

10

Circuit would agree. Plaintiffs have not brought this action against any of the officers involved, nor are they challenging the degree of force used by the officers, and any exigent circumstances at the time of arrest are therefore irrelevant. Rather, Plaintiffs have brought their ADA claim against the Commission for failing to properly train those officers, resulting in the death of Schorr. The alleged non-compliance with the training requirements of the ADA did not occur the day that the officers shot Ryan Schorr; it occurred well before that day, when the Defendant policy makers failed to institute polices to accommodate disabled individuals such as Schorr by giving the officers the tools and resources to handle the situation peacefully.

In sum, this Court finds that the plain language of the statute, other legislative materials, and case precedent all strongly indicate that properly executing § 302 involuntary commitment warrants and modifying police practices to accommodate subjects of the warrants are included in "programs, services, or activities of a public entity" under § 12132 of the ADA. Therefore, it is clear to this Court that Plaintiffs have stated a claim under the ADA. This Court will respectfully decline to adopt Magistrate Mannion's recommendation and will allow the ADA claim to proceed against the Commission.

IV.    **ORDER**

       **AND NOW**, therefore, **IT IS ORDERED THAT**:

1.      Plaintiffs' objections to the Report and Recommendation (Doc. No. 64) are **SUSTAINED**.

2.      This Court adopts the Report and Recommendation (Doc. No. 63) in part as follows:  Defendants Commission and Dougherty's motion to dismiss Count I of Plaintiffs' first amended complaint (Doc. No. 34) is **DENIED**.

3.      This Court declines to adopt the Report and Recommendation in part as follows: Defendant Commission's motion to dismiss Count V of Plaintiffs' first amended complaint (Doc. No. 34) is **DENIED**.

 

                                        Yvette Kane
                                        United States District Judge

Date:    _10 Feb_    , 2003