Rec'd
FILED
HARRISBURG, PA

FEB 2 8 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH I. SCHORR and SUSAN       :       JURY TRIAL DEMANDED
SCHORR, in their own right and   :
as personal representatives of the :
Estate of RYAN K. SCHORR,        :
              Plaintiffs,        :
                                 :
          v.                     :       NO.: 1:CV-01-0930
                                 :
WEST SHORE REGIONAL POLICE :
DEPARTMENT, HOWARD              :
DOUGHERTY, CUMBERLAND          :
COUNTY, and HOLY SPIRIT        :
HOSPITAL,                       :
              Defendants.        :       HONORABLE YVETTE KANE


## BRIEF IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56
## OF DEFENDANT HOLY SPIRIT HOSPITAL

# TABLE OF CONTENTS

Page No.

I.  PROCEDURAL HISTORY ...................................... 1

II. STATEMENT OF THE FACTS .................................. 2

III. STATEMENT OF QUESTIONS PRESENTED ..................... 6

    A. SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY
       JUDGMENT AS TO PLAINTIFFS' CLAIMS BROUGHT
       PURSUANT TO 42 U.S.C. §1983 BE GRANTED BECAUSE THIS
       COURT HAS PREVIOUSLY HELD THAT THE HOSPITAL IS
       NOT A "STATE ACTOR" IN THE CONTEXT OF AN
       INVOLUNTARY COMMITMENT AND/OR BECAUSE
       PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE
       HOSPITAL ACTED WITH "DELIBERATE INDIFFERENCE? ... 6

    B. SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY
       JUDGMENT AS TO PLAINTIFFS' CLAIMS IN COUNT III OF
       THE FIRST AMENDED COMPLAINT FOR ORDINARY
       NEGLIGENCE BE GRANTED BECAUSE THE PENNSYLVANIA
       MENTAL HEALTH PROCEDURES ACT PROVIDES IMMUNITY
       FOR SUCH FACILITIES ABSENT A SHOWING OF "WILLFUL
       MISCONDUCT" OR "GROSS NEGLIGENCE?" .............. 7

    C. SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY
       JUDGMENT AS TO PLAINTIFFS' CLAIM FOR FILIAL
       CONSORTIUM IN PARAGRAPHS 35 AND 36 AND
       INCORPORATED INTO/REFERRED TO IN PARAGRAPH 73 OF
       COUNT VII OF THE FIRST AMENDED COMPLAINT BE
       GRANTED BECAUSE SUCH A CLAIM IS NOT RECOGNIZED
       UNDER PENNSYLVANIA LAW AND IS NOT AN ELEMENT OF
       DAMAGES IN A WRONGFUL DEATH ACTION? ............ 7

i

D.  SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS FOR "GROSS NEGLIGENCE" IN COUNT III OF THE FIRST AMENDED COMPLAINT BE GRANTED BECAUSE THERE ARE NO FACTS OF RECORD TO SUPPORT SUCH A CLAIM? .............. 7

IV.  ARGUMENT ............................................... 7

A.  Holy Spirit Hospital is not a state actor in the involuntary commitment context pursuant to *Janicsko*. .................... 8

B.  Pennsylvania Mental Health Act Immunity .................. 17

C.  No filial consortium under Pennsylvania law ................ 23

D.  Holy Spirit Hospital's conduct does not rise to the level of "gross negligence." ...................................... 26

V.  CONCLUSION .......................................... 28

ii

## TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct.
2505, 91 L. Ed. 2d 202 (1986) ................................................. 8

Anderson v. Simon, 217 F.3d 472 (7th Cir. 2000) cert. denied,
531 U.S. 1073 (2001) ............................................................. 3

Bloom v. Dubois Regional Medical Center, 409 Pa. Super. 83,
597 A.2d 671 (1991) .................................................. 20, 26, 27

Brower by Brower v. City of Philadelphia, 124 Pa. Commw.
586, 557 A.2d 48 (1989), *appeal denied*, 525 Pa. 604, 575
A.2d 569 (1990) ..................................................................... 25

Burkett v. George, 118 Pa. Commw. 543, 545 A.2d 985
(1988) .................................................................................. 24

Evans v. Philadelphia Transportation Company, 418 Pa. 567,
212 A.2d 440 (1965) .................................................. 20, 21, 27

Farago v. Sacred Heart Hospital, 522 Pa. 410, 562 A.2d
300 (1989) ....................................................................... 19, 22

Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992) ................... 14

Holland v. Commonwealth, Norristown State Hospital, 136
Pa. Commw. 655, 584 A.2d 1056 (1990) ............................. 22

Huda v. Kirk, 122 Pa. Commw. 129, 551 A.2d 637 (1988),
*allocatur denied*, 524 Pa. 613, 569 A.2d 1371 (1989) ......... 25

Jackson v. Tastykake, Inc., 437 Pa. Super. 34, 648 A.2d
1214 (1994) .......................................................................... 25

Janicsko v. Pellman, 774 F. Supp. 331 (M.D. Pa. 1991) .. 8, 9, 10,
11, 12, 13,
14, 17

iii

King v. Breach, 115 Pa. Commw. 355, 540 A.2d 976
    (1988) ............................................................................ 21, 27

Parratt v. Taylor, 451 U.S. 517, 101 S. Ct. 1908, 68 L. Ed.
    2d 420 (1981) ....................................................................... 8

Pension Benefit Guaranty Corp. v. White Consolidated
    Industrial Inc., 998 F.2d 1192 (3d Cir. 1993) ......................... 3

Pino v. Higgs, 75 F.3d 1461 (10th Cir. 1996) ............................. 14

Quinn v. City of Pittsburgh, 243 Pa. 521, 90 A. 353 (1914) ..... 25

S.P. v. City of Takoma Park, 134 F.3d 260 (4th Cir. 1998)    13, 14

Schroeder v. Ear, Nose and Throat Associates of Lehigh
    Valley, Inc., 383 Pa. Super. 440, 557 A.2d 21 (1989),
    appeal denied, 523 Pa. 650, 567 A.2d 653 (1989) ............... 25

Scott v. Plante, 532 F.2d 939 (3rd Cir. 1976) ............................. 7

Shaw by Strain v. Strackhouse, 920 F.2d 1135 (3d Cir. 1990) .. 8

Spencer v. Lee, 864 F.2d 1376 (7th Cir. 1989), cert. denied,
    _____ U.S. _____, 110 S. Ct. 1317, 108 L. Ed. 2d 493
    (1990) .............................................................................. 11

Tyro Industries, Inc. v. Trevose Construction Co., Inc., 737
    F. Supp. 856 (E.D. Pa. 1990) .................................................. 8

**STATUTES**

Fed. R. Civ. P. 56 ..................................................................... 2, 7

**MISCELLANEOUS**

1:CV-01-0930 ............................................................................ 1

42 U.S.C. §1983 ............................................................. 1, 2, 6,
                                                                            8, 10, 11,
                                                                            13, 14, 17, 28

iv

42 P.S. Section 8301  ....................................................... 24

50 P.S. §7302  ..................................................... 3, 18, 19,
20, 21, 22,
26

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH I. SCHORR and SUSAN      :      JURY TRIAL DEMANDED
SCHORR, in their own right and   :
as personal representatives of the   :
Estate of RYAN K. SCHORR,        :
           Plaintiffs,      :
                     :

         v.      :      NO.:  1:CV-01-0930
                     :

WEST SHORE REGIONAL POLICE :
DEPARTMENT, HOWARD            :
DOUGHERTY, CUMBERLAND       :
COUNTY, and HOLY SPIRIT        :
HOSPITAL,                        :
           Defendants.      :      HONORABLE YVETTE KANE

## BRIEF IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56
## OF DEFENDANT HOLY SPIRIT HOSPITAL

I.    PROCEDURAL HISTORY

This action arises from the death of the Plaintiffs' Decedent (their son) who

eloped from Holy Spirit Hospital in the course of an involuntary commitment

pursuant to §302 of the Mental Health Procedures Act ("MHPA") and, after a violent struggle with two police officers of the Defendant West Shore Regional Police Department, was fatally shot by one of the officers. On May 25, 2001 Plaintiffs Keith I. Schorr and Susan Schorr, in their own right and as personal representatives of the Estate of Ryan K. Schorr, filed a complaint against Holy Spirit Hospital and other Defendants. A First Amended Complaint was filed on August 2, 2001. The First Amended Complaint has seven counts. Count II is brought pursuant to 42 U.S.C. §1983 and alleges violation of the Fourteenth Amendment of the United States Constitution; Count III is a pendent state law claim that alleges negligence; Counts VI and VII are brought against all the Defendants and allege a survival action and wrongful death action, respectively. On January 7, 2002, Holy Spirit filed an Answer with Affirmative Defenses to Plaintiffs' First Amended Complaint. On February 28, 2003, Holy Spirit filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. This Brief is filed simultaneously in support of that Motion.

II.   STATEMENT OF THE FACTS

This action arises out of the death of Plaintiffs' son, Ryan K. Schorr, as a result of an incident that occurred on November 18, 2000. See First Amended Complaint, paragraphs 1, 5 and 17. The Decedent suffered from a psychiatric

2

illness known as bipolar (manic) disorder. <u>See</u> First Amended Complaint, paragraph 12. Shortly before November 18, 2000, the Decedent's mental state allegedly deteriorated. <u>See</u> First Amended Complaint, paragraph 15. With the Plaintiffs' approval, the Decedent's housemate, Matthew Gaumer, requested that an order be issued for the Decedent's involuntary commitment pursuant to §302 of the Pennsylvania Mental Health Procedures Act, 50 P.S. §7302. <u>See</u> First Amended Complaint, paragraph 17. Grand Jury Report at 8-9.[1] (The Grand Jury Report has been previously filed as an exhibit to Defendant West Shore Regional Police Department's 12(b)(6) Motion.)

A crisis intervention worker at Holy Spirit Hospital evaluated the application, determined that the Decedent presented a clear and present danger to himself or others, and caused an order to be issued for the Decedent's involuntary commitment. <u>See</u> First Amended Complaint, paragraph 19; Grand Jury Report at

---

[1] It is well settled that [in ruling on a motion to dismiss,] a district court may take judicial notice of matters of public record without converting the motion into one for summary judgment. <u>Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993); <u>Anderson v. Simon</u>, 217 F.3d 472, 474-75 (7th Cir. 2000) <u>cert. denied</u>, 531 U.S. 1073 (2001). Since the Grand Jury Report has been "filed as a public record with the Court of Common Pleas of Cumberland County," this Court can consider it for purposes of ruling on the instant motion. <u>See</u> Grand Jury Report, at 1. A copy of the Grand Jury is attached to the Motion as Exhibit "B."

3

9.  After obtaining the order and corresponding warrant, Officers Gary Berresford and Harry Hart of the West Shore Regional Police Department went to Decedent's house and transported him to Holy Spirit Hospital.  See First Amended Complaint, paragraph 21; Grand Jury Report at 11.

At Holy Spirit Hospital, the officers were instructed to take the Decedent to Room 17 in the Emergency Department ("ED").  Grand Jury Report at 11.  Room 17 in the ED of Holy Spirit Hospital is a specially adapted room used for patients that present a potential security risk.  Grand Jury Report at 11.  It is equipped with minimal furniture that is bolted to the floor and with a door that locks from outside whenever the door is closed.  Grand Jury Report at 11.  The door to Room 17 also has an observation window from which healthcare providers and crisis workers can observe the patient within.  (See Exhibit "E," Deposition Transcript of Candice Highfield, p. 17, lines 11-14).  The ususal §302 commitment procedure involved using Room 17. (See Exhibit "C," Deposition Transcript of Carol Joerger, R.N., p. 21, lines 7-12).

The Decedent became increasingly agitated and the ED charge nurse, Carol Joerger, R.N. called security for assistance.  Grand Jury Report at 11-12.  The security officer, Cory Graby, arrived shortly thereafter.  Grand Jury Report at 11-

4

12. This is a standard practice during a §302 mental health intake.  Grand Jury

Report at 11-12.

Afterward, Nurse Joerger attempted to conduct an initial medical

assessment of the Decedent.  Grand Jury Report at 12.  Crisis Worker Candice

Highfield telephoned the Decedent's mother to get more background information

for the assessment.  Grand Jury Report at 12.  Emergency Department Dr. David

Spurrier then assessed the Decedent.  Grand Jury Report at 12.  Dr. Spurrier then

left the room and completed the §302 paperwork for the involuntary committal

because, in his opinion, the Decedent was psychotic and hallucinatory.  Grand

Jury Report at 13.  Dr. Spurrier and crisis worker Highfield then discussed the

Decedent's status, and Dr. Spurrier told her he would administer medication to the

Decedent anytime that Highfield felt it necessary.  Grand Jury Report at 13.

Highfield replied that first she wanted to read the Decedent his §302 rights.  Grand

Jury Report at 13.  She went to the door of Room 17, looked through the

observation window, and saw the Decedent sitting on the bed.  Grand Jury Report

at 13.  However, as she attempted to enter the room, the Decedent forced his way

past her and ran out of the hospital.  See First Amended Complaint, paragraph 23;

Grand Jury Report at 13.

Eventually, the Decedent returned to his house.  See First Amended Complaint, paragraph 24.  After being notified of the Decedent's whereabouts, the West Shore Regional Police Department ("WSRPD") officers returned to the Decedent's house and again attempted to take him into custody.  See First Amended Complaint, paragraphs 25 and 29.  The subsequent encounter escalated into a physical struggle between the Decedent and the WSRPD officers, during which the Decedent was fatally wounded by one of the officers.  See First Amended Complaint, paragraph 33.

III.   STATEMENT OF QUESTIONS PRESENTED

     A.    **SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS BROUGHT PURSUANT TO 42 U.S.C. §1983 BE GRANTED BECAUSE THIS COURT HAS PREVIOUSLY HELD THAT THE HOSPITAL IS NOT A "STATE ACTOR" IN THE CONTEXT OF AN INVOLUNTARY COMMITMENT AND/OR BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE HOSPITAL ACTED WITH "DELIBERATE INDIFFERENCE?"**

          Suggested Answer:    **Yes.**

     B.    **SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS IN COUNT III OF THE FIRST AMENDED COMPLAINT FOR ORDINARY NEGLIGENCE BE GRANTED BECAUSE THE PENNSYLVANIA MENTAL HEALTH PROCEDURES ACT PROVIDES IMMUNITY FOR SUCH FACILITIES ABSENT A**

SHOWING OF "WILLFUL MISCONDUCT" OR "GROSS NEGLIGENCE?"

Suggested Answer:      **Yes.**

**C.    SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIM FOR FILIAL CONSORTIUM IN PARAGRAPHS 35 AND 36 AND INCORPORATED INTO/REFERRED TO IN PARAGRAPH 73 OF COUNT VII OF THE FIRST AMENDED COMPLAINT BE GRANTED BECAUSE SUCH A CLAIM IS NOT RECOGNIZED UNDER PENNSYLVANIA LAW AND IS NOT AN ELEMENT OF DAMAGES IN A WRONGFUL DEATH ACTION?**

Suggested Answer:      **Yes.**

**D.    SHOULD HOLY SPIRIT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS FOR "GROSS NEGLIGENCE" IN COUNT III OF THE FIRST AMENDED COMPLAINT BE GRANTED BECAUSE THERE ARE NO FACTS OF RECORD TO SUPPORT SUCH A CLAIM?**

Suggested Answer:      **Yes.**

## IV.    ARGUMENT

Summary judgment is properly granted if, taking the non-moving party's allegations as true and drawing all inferences in its favor, the court is convinced from its review of the evidence that there is no genuine issue of material fact and the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(b); Scott v. Plante, 532 F.2d 939, 940 (3rd Cir. 1976). An issue is "genuine" only if

7

the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). The facts must be viewed in the light most

favorable to the non-moving party, and reasonable doubt as to the existence of a

genuine issue of material fact is to be resolved against the moving party. <u>Tyro</u>

<u>Industries, Inc. v. Trevose Construction Co., Inc.</u>, 737 F. Supp. 856, 861 (E.D. Pa.

1990). However, if evidence is "merely colorable" or "not significantly

probative," summary judgment may be granted. <u>Anderson</u>, 106 S. Ct. at 2511.

**A.     Holy Spirit Hospital is not a state actor in the involuntary
         commitment context pursuant to *Janicsko*.**

Count II of the First Amended Complaint alleges a claim pursuant to 42

U.S.C. §1983, claiming that Holy Spirit Hospital's conduct pursuant to the

involuntary commitment procedures of §302 of the Mental Health Procedures Act

("MHPA") violated the rights of the Plaintiffs and the Decedent under the

Fourteenth Amendment and federal law. <u>See</u> First Amended Complaint, Count I.

In order to prevail in a §1983 action, a Plaintiff must establish (1) that "the

conduct complained of was committed by a person acting under color of state law"

and (2) that the "conduct deprived a person of rights, privileges or immunities

secured by the Constitution or laws of the United States." <u>Shaw by Strain v.</u>

8

<u>Strackhouse</u>, 920 F.2d 1135, 1141-1142 (3d Cir. 1990), *citing*, <u>Parratt v. Taylor</u>, 451 U.S. 517, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420 (1981).

In the First Amended Complaint, Plaintiffs allege in a conclusory fashion that Holy Spirit Hospital's "acts material to this claim" "were done under color and authority of state law." <u>See</u> First Amended Complaint, paragraph 49.

However, this Court has held in <u>Janicsko v. Pellman</u>, 774 F. Supp. 331 (M.D. Pa. 1991) that the involuntary commitment of the mentally ill by private physicians and hospitals under the MHPA is not "a function compelled by or sufficiently connected to state directives to attribute those actions to the state." <u>Janicsko v. Pellman</u>, 774 F. Supp. 331, 339 (M.D. Pa. 1991).

In <u>Janicsko</u>, after the plaintiff, Mary Sue Janicsko, tried to step into the path of an oncoming car and then locked herself in her own car and refused to come out, police transported Mrs. Janicsko to Holy Spirit Hospital where she was examined in the emergency unit by a doctor who concluded that she should be involuntarily committed pursuant to §302 of the MHPA. <u>Janicsko</u>, 774 F. Supp. at 334. Subsequently, a hearing was held as required by §303 of the MHPA to extend Mrs. Janicsko's commitment. <u>Id.</u> The hearing officer dismissed the petition and directed that Mrs. Janicsko be discharged. <u>Id.</u>

9

Mrs. Janicsko filed suit pursuant to 42 U.S.C. §1983 against various defendants, including Holy Spirit Hospital, alleging that in the course of the §302 involuntary commitment, they violated her civil rights as guaranteed by the Fourth, Fifth and Fourteenth Amendments.  The defendants filed motions for summary judgment.

In deciding the summary judgment motions, the Honorable Sylvia Rambo stated that the critical issue with regard to Holy Spirit Hospital and the defendant physicians was whether their actions in committing Mrs. Janicsko could be considered the actions of the state for the purposes of liability under 42 U.S.C. §1983.  In Janicsko, the constitutional sections which created the relevant substantive rights in the case–the Fourth and Fourteenth Amendments– apply only to governmental entities.  Janicsko, 774 F. Supp. at 335, citing, United States v. Price, 383 U.S. 787, 794 n. 7, 86 S. Ct. 1152, 1157 n. 7, 16 L. Ed. 2d 267 (1966). Similarly, in the instant case, the Plaintiffs plead that their Fourteenth Amendment rights were violated and therefore, those allegations apply only to governmental entities.

The Janicsko court further noted that the complained of action in a §1983 case must be one that is "fairly attributable to the state," and not to some private actor.  Janicsko, 774 F. Supp. at 335, citing, Lugar v. Edmondson Oil Co., 457

10

U.S. 922, 937, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982). However, as the

court in <u>Janicsko</u> pointed out, "Holy Spirit Hospital is a privately owned and

operated health care facility." <u>Janicsko</u>, 774 F. Supp. at 335. Therefore, it had to

be determined whether sufficient state involvement with private activity exists "so

that the imprimatur of the state actor may be attributed to an essentially private

actor." <u>Janicsko</u>, 774 F. Supp. at 335. The <u>Janicsko</u> court noted that it had found

no cases in the Third Circuit holding that the commitment provisions of the

MHPA do or do not convert private healthcare providers to state actors for the

purposes of suit under §1983. <u>Janicsko</u>, 774 F. Supp. at 336. The <u>Janicsko</u> court

then examined the language of the relevant sections of the MHPA to determine if

it replaces private physician or facility discretion with state mandated standards

and to determine whether the state compels or encourages a facility's or

physician's actions with regard to involuntary commitment. <u>Id.</u> The court also

compared the language of the MHPA to that of an Illinois statute at issue in a

Seventh Circuit case, <u>Spencer v. Lee</u>, 864 F.2d 1376 (7th Cir. 1989), *cert. denied*, _

_U.S. ___, 110 S. Ct. 1317, 108 L. Ed. 2d 493 (1990). In <u>Spencer</u>, a patient

involuntarily committed by a private doctor and hospital pursuant to an Illinois

mental health statute sued both after sustaining injuries from faultily prescribed

medication. <u>Janicsko</u>, 774 F. Supp. at 337. The <u>Spencer</u> court had determined

11

that "[i]f the state of Illinois ordered or encouraged private persons to commit the

mentally ill, they would indeed be state actors, for they would be doing the state's

business." 774 F. Supp. at 338.

After comparing and analyzing the language of Pennsylvania's MHPA to

the Illinois statute, the Janicsko court stated:

> Unlike ¶3-600 of the Illinois Act, the Pennsylvania Statute does not
> so clearly allocate all the discretion of commitment to a physician,
> and, in fact, uses language which suggests a degree of coercion.
>
> * * *
>
> Further, Section 301's detailed definition of "severely, mentally
> disabled," including enumerating specific factors to take into account
> in the determination of whether the person constitutes a "clear and
> present danger" to sell for others, necessarily takes away discretion
> which physicians operating under the more vague Illinois Act would
> have.
>
> However, despite these differences, this Court cannot hold that the
> standards set by the MHPA rise to the level of coercion. First, the
> "shall" of Section 302(b) relating to the necessity of emergency
> treatment appeared to be in place more for the protection of the
> person to be committed, than to compel that persons commitment by
> private actors. . . . Second, subsection (a) of Section 7302, relating to
> the application for examination, does not use the language of
> compulsion, but rather uses the term "may."
> * * *
>
> Third, although the term "severely, mental disabled" is extensively
> defined in Section 301 of the MHPA, the Court believes that the
> statute nevertheless leaves a sufficient degree of this determination to

12

the discretion of a medical practitioner using the nongovernmentally
imposed criteria of the medical profession.

Janicsko, 774 F. Supp. at 338-339

The Janicsko court subsequently concluded:

Given the language of the relevant section of the MHPA, this Court
cannot say that the involuntary commitment of the mentally ill by
private physicians and hospitals is, under the MHPA, a function
compelled by or sufficiently connected to state directives to attribute
those actions to the state. Accordingly, no cause of action may be
stated under Section 1983 against three sets of private defendants
[which includes Holy Spirit Hospital].

Janicsko, 774 F. Supp. at 339.

Judge Rambo thereby held that Holy Spirit Hospital and two defendant physicians
were not "state actors" for purposes of §1983 claims based on their conduct
pursuant to Pennsylvania's involuntary commitment statute.

Also, in S.P. v. City of Takoma Park, 134 F.3d 260 (4th Cir. 1998), a
claimant who was involuntarily seized and transported to a private hospital for
emergency psychiatric evaluation brought a federal civil rights action against the
city, city police officers, hospital and hospital personnel.  In reviewing the district
court's grant of summary judgment, the Fourth Circuit Court of Appeals held that
Maryland's involuntary commitment statute was more permissive than mandatory
and that it grants private physicians complete medical discretion in determining

13

whether an individual should be involuntarily committed.  134 F.3d at 268.  The

court stated that the state's statutory scheme did not coerce or encourage

physicians to involuntarily commit individuals.  The court further noted that the

state is not liable for determinations that "ultimately turn on medical judgments

made by parties according to professional standards that are not established by the

state."  City of Takoma Park, 134 F.3d at 269-270.  The court then dismissed the

§1983 claims against the private hospital and hospital personnel.  City of Tacoma

Park, 134 F.3d at 269-270.  See also Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir.

1996) (concluding that independent physicians were not state actors in the context

of mental civil commitments); Harvey v. Harvey, 949 F.2d 1127, 1131 (11th Cir.

1992) (concluding that independent physicians were not state actors in the context

of mental civil commitments).

    Therefore, pursuant to this Court's holding in Janicsko, Holy Spirit

Hospital, a private entity, is not a state actor for §1983 purposes.  Consequently,

Plaintiffs' §1983 claims in Count II of the First Amended Complaint should be

dismissed for failure to state a claim upon which relief may be granted.

    Even if, *arguendo*, Holy Spirit Hospital could be considered a state actor in

the involuntary commitment context (which pursuant to Janicsko it clearly

14

cannot), Plaintiffs have failed to establish that Holy Spirit Hospital, through its customs, practices and/or policies, acted with "deliberate indifference."

Plaintiffs allege that Holy Spirit Hospital acted with "deliberate indifference" in three areas: (1) employment of health care providers who would provide treatment to persons detained under §302; (2) training of physicians, crisis intervention workers, nurses and other personnel who would treat persons detained under §302; and (3) maintenance of adequate crisis intervention facilities and staff.

With regard to employment of persons qualified to provide treatment and care to persons detained under §302, Holy Spirit Hospital employed qualified persons at all times relevant to the events alleged in the First Amended Complaint In support of this argument, Defendant Holy Spirit Hospital incorporates herein by reference paragraph 38 of its Motion for Summary Judgment.

Also, with regard to employment of persons qualified to provide treatment and care to persons detained under §302, Steve Bucciferro, administrative director of mental health services, described the training and educational requirements for professional staff who provide Crisis Intervention services. See Exhibit "F", pages 17-19. In further support of this argument, Holy Spirit Hospital

15

incorporates herein by reference paragraphs 40, 41 and 42 of Defendant Holy Spirit Hospital's Motion for Summary Judgment.

With regard to training people to provide treatment and care pursuant to persons detained under §302, Holy Spirit Hospital incorporates herein by reference paragraph 43 of its Motion for Summary Judgment.

With regard to adequate crisis intervention facilities, Holy Spirit Hospital incorporates herein by reference paragraph 44 of its Motion for Summary Judgment.

With regard to allegations regarding "adequate" staffing, paragraphs 38 to 43 of the Motion for Summary Judgment of Defendant Holy Spirit Hospital are incorporated herein by reference to show the adequacy of the staff's training, education and experience.

Therefore, as demonstrated by the above-cited evidence of record, Holy Spirit Hospital did not show deliberate indifference with regard to customs, policies or procedures regarding employing and training physicians and other healthcare providers who would be providing treatment to §302 detainees; nor did the hospital show deliberate indifference in the maintenance of adequate crisis intervention staff and facilities.

16

For these reasons and pursuant to this Court's prior ruling in <u>Janicsko</u>,

Count II of the First Amended Complaint, alleging violation of 42 U.S.C. §1983,

should be dismissed with prejudice as to Holy Spirit Hospital.

**B.      Pennsylvania Mental Health Act Immunity**

Count III of Plaintiffs' First Amended Complaint is a pendent state law

claim for negligence. In paragraphs 53 and 54 of Count III, Plaintiffs allege

ordinary negligence against Holy Spirit Hospital.

53.     Plaintiffs' decedent was injured and died as a result of the *negligence* and/or gross negligence of Holy Spirit and its employees, agents and servants, all of whom acted within the course and scope of their employment, agency, or service.

54.     Said *negligence* included, but was not limited to:

a.     Failure to train staff and physicians properly;

b.     Failure to provide adequate security at the hospital's crisis intervention unit;

c.     Failure to design, provide or maintain a proper facility for the detention, evaluation and/or treatment of mentally ill persons subject to involuntary commitment procedures;

d.     Failure to provide proper diagnosis, evaluation and treatment to Ryan Schorr.

<u>See</u> First Amended Complaint, Paragraphs 53 and 54 (emphasis added).

17

Holy Spirit Hospital has raised as an affirmative defense its immunity from liability set forth in Pennsylvania's Mental Health Procedures Act, Act of July 9, 1996, P.L. 817, No. 143, as amended, 50 P.S. §7101, *et seq.* ["MHPA"] which provides psychiatrists and mental health facilities with immunity from criminal and civil liability for their decisions pertaining to the care and treatment of mentally ill patients.  The Pennsylvania legislature has clearly indicated that the public policy in the Commonwealth favors protecting the rights of the mentally ill and, as a corollary thereto, restricting the liability of those engaged in treating the mentally ill.  Section 7102 of the MHPA states "it is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this Act to establish procedures whereby this policy can be affected."  50 P.S. §7102.  Section 7102 further provides that "[i]n every case, the least restrictions consistent with adequate treatment shall be employed."

In order to effectuate this policy, the legislature has established a degree of immunity from civil and criminal liability for those engaged in the treatment of the mentally ill.  See generally, 50 P.S. §7114.  This section of the MHPA provides immunity from civil and criminal liability for those engaged in treatment

18

of the mentally ill under the MHPA absence a finding of "willful misconduct" or "gross negligence" on their part.

In <u>Farago v. Sacred Heart Hospital</u>, 522 Pa. 410, 562 A.2d 300 (1989), the court held that the immunity provisions extended to the entire course of treatment provided a mentally ill person under the MHPA. The treatment which is shielded from liability, includes "diagnoses, evaluation, therapy or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person for mental illness, and shall also include care and other services that supplement treatment and aid or promote such recovery." <u>Id</u>. at 418, 562 A.2d at 304. <u>See also</u> 50 P.S. §7104.

The <u>Fargo</u> Court also held that a "hospital" falls within the ambit of the MHPA and is protected by limited immunity, and is liable only for willful misconduct or gross negligence. <u>See Farago</u>, 522 Pa. at 416-417, 562 A.2d at 303. Therefore, it is clear that the MHPA applies to Holy Spirit Hospital.

Any analysis and holding that seeks to impose civil liability against a mental health provider providing services to a mental health patient under the MHPA must be sensitive to this statutory framework under which the mental health provider must function. The mental health provider must treat the patient in the least restrictive alternative consistent with adequate treatment. An analysis

19

seeking to impose civil liability must recognize the uncertainty inherent in the field of psychiatry and the treatment of mentally ill patients.

The MHPA provides that psychiatrists and mental health facilities cannot be held liable absent a showing that their conduct rose to the level of "willful misconduct" or "gross negligence" but does not provide definitions of those terms. 50 P.S. §7114. The Pennsylvania Superior Court thoroughly analyzed the concept of gross negligence under the MHPA in Bloom v. Dubois Regional Medical Center, 409 Pa. Super. 83, 597 A.2d 671 (1991). The Bloom court stated:

> It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

Bloom, 409 Pa. Super at 98, 597 A.2d at 679.

"Willful misconduct" was defined by the Pennsylvania Supreme Court in Evans v. Philadelphia Transportation Company, 418 Pa. 567, 212 A.2d 440 (1965). The Court stated, "[w]illful misconduct means that the actor desired to bring about the results that followed, or at least, that he was aware that it was

20

substantially certain to ensue." <u>Evans</u>, 418 Pa. at 573-574, 212 A.2d at 443. <u>See</u>

<u>also</u>, <u>King v. Breach</u>, 115 Pa. Commw. 355, 540 A.2d 976 (1988).

Therefore, institutions providing psychiatric services cannot be held liable

for claims of ordinary negligence such as those alleged against Holy Spirit

Hospital in Count III of the First Amended Complaint. As a result, Plaintiffs'

state law claims of ordinary negligence brought against Holy Sprit Hospital in

Count III of the First Amended Complaint should be dismissed with prejudice.

In this Court's December 4, 2001 Memorandum and Order, the Honorable

Yvette Kane wrote: "Indeed, Plaintiffs concede that they must prove willful

misconduct or gross negligence for items [54] (a) and (d) [in Count III of the First

Amended Complaint] in the above list because those were ***treatment*** decisions."

<u>See</u> Memorandum and Order dated December 4, 2001, pages 3-4 (emphasis

added). However, Plaintiff's allegations in subparagraphs 54(b) and 54(c) also

involve treatment decisions. Those allegations in subparagraphs 54(b) and 54(c),

although couched in terms of "security" and "design" issues actually involve the

issue of the supervision of the decedent while he was at Holy Spirit Hospital.

"***Treatment*** as defined by Sections 104 and 107 of the MHPA fully

encompasses decisions to 'maintain decent, safe and healthful living conditions,'

50 P.S. Section 7104, and the need 'to impose the least restrictive alternative

21

consistent with affording the person adequate treatment for his condition.' 50 P.S.

Section 7107." Holland v. Commonwealth, Norristown State Hospital, 136 Pa.

Commw. 655, 661-662, 584 A.2d 1056, 1058 (1990) (emphasis added).

Moreover, the Pennsylvania Commonwealth Court has held that "decisions made

concerning the supervision of the patient fall with [in] the definition of *treatment*

in the MHPA." Holland v. Commonwealth, Norristown State Hospital, 136 Pa.

Commw. at 662, 584 A.2d at 1058 (emphasis added). See also Farago v. Sacred

Heart General Hospital, 522 Pa. 410, 562 A.2d 300 (1989) (decision by hospital

staff to allow mental patient to remain in open ward, on one hour watch, rather

than on closer supervision, was a treatment decision and in the absence of willful

misconduct or gross negligence, it was protected under the immunity provision).

In the instant case, Dr. David Spurrier of Holy Spirit Hospital performed an

assessment of the Decedent and, together with other hospital staff, including a

crisis intervention worker, determined to allow the decedent to remain

unsupervised in room 17 of the emergency department without physical restraints.

See Exhibit A, Written Statement of David J. Spurrier, M.D.  Therefore, Holy

Spirit's decision regarding supervision of the decedent was a "treatment decision"

and in order to establish Plaintiffs' allegations in not only subparagraphs 54(a) and

54(d), but also in 54(b) and 54(c), Plaintiffs must prove willful misconduct or

22

gross negligence, and Plaintiffs' ordinary negligence claims should be dismissed with prejudice.

Significantly, Plaintiffs' counsel, Gerald J. Williams, Esquire, admitted in the letter to Plaintiffs' expert, Ira S. Somerson, that Plaintiffs would have to prove "gross negligence" in order to recover against Holy Spirit Hospital. This letter was attached to the transcript of the Deposition of Ira S. Somerson as "Somerson – Exhibit 6 and states:

> As you know, the burden of proof we must meet with respect to our claims against the Hospital is that it was "grossly negligent."

See Exhibit B, Transcript of Deposition of Ira S. Somerson (plus Exhibit attached thereto).

Therefore, it is clear that the MHPA provides immunity for Holy Spirit Hospital from claim for ordinary negligence. The Plaintiffs' claims against Holy Spirit Hospital for ordinary negligence, including those in Count III and particularly in subparagraphs 53 and 54(a)-(d) should be dismissed with prejudice.

**C.    No filial consortium under Pennsylvania law**

In Count VII of the First Amended Complaint, Plaintiffs bring a derivative claim under Pennsylvania's Wrongful Death Act.

In Paragraph 73 of Count VII, Plaintiff's plead as follows:

23

73.    Plaintiffs' claims [sic] damages for the harms and
       injuries averred in Paragraph 35, above, pursuant to
       Pennsylvania's Wrongful Death Act, 42 P.S. Section
       8301.

See First Amended Complaint, Paragraph 73.

In Paragraphs 35 and 36 of the First Amended Complaint, Plaintiff's plead

as follows:

35.    As a result of Ryan Schorr's death, his estate in heirs
       suffered pecuniary losses, incurred medical and funeral
       expenses, and suffered the ***deprivation of his aid,
       assistance, services, maintenance*** and the economic
       value of his life during the remainder of his life
       expectancy.

36.    As a further result of Ryan Schorr's death, Plaintiffs, his
       parents, suffered a deprivation of their constitutionally
       protected interest in his life, including ***their interest in
       his companionship and support***.

See First Amended Complaint, Paragraphs 35 and 36 (emphasis added).

Under Pennsylvania law, wrongful death damages are to compensate

spouse, children or parents of the deceased for pecuniary loss they have sustained

by denial of future contributions the deceased would have made in his lifetime,

and also to allow recovery for certain administration, funeral and medical

expenses.  Burkett v. George, 118 Pa. Commw. 543, 545 A.2d 985 (1988).

However, in paragraphs 35 and 36, quoted above and incorporated into/referred to

24

in paragraphs 73 of Count VII of the First Amended Complaint, Plaintiffs bring a loss of filial consortium claim.

Under Pennsylvania law, suits for loss of consortium are limited to claims by husband and wives. <u>Huda v. Kirk</u>, 122 Pa. Commw. 129, 551 A.2d 637 (1988), *allocatur denied*, 524 Pa. 613, 569 A.2d 1371 (1989). In <u>Quinn v. City of Pittsburgh</u>, 243 Pa. 521, 90 A. 353 (1914), the Pennsylvania Supreme Court stated that claims for loss of consortium are limited to spouses and do not extend to the loss of a child's consortium. <u>Jackson v. Tastykake, Inc.</u>, 437 Pa. Super. 34, 39, 648 A.2d 1214, 1217 (1994). This rule has remained undisturbed as the law of Pennsylvania. <u>Jackson</u>, 437 Pa. Super. at 39, 648 A.2d at 1219 (refusing, as an intermediate appellate court, to recognize a cause of action for filial consortium). <u>See also</u> <u>Schroeder v. Ear, Nose and Throat Associates of Lehigh Valley, Inc.</u>, 383 Pa. Super. 440, 557 A.2d 21 (1989), *appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989); <u>Brower by Brower v. City of Philadelphia</u>, 124 Pa. Commw. 586, 557 A.2d 48 (1989), *appeal denied*, 525 Pa. 604, 575 A.2d 569 (1990).

It is will settled Pennsylvania law then that when a child is injured, a parent may not bring a loss of consortium claim against the tort-feasor to recover damages for loss of the services, and companionship that the child would have otherwise provided. Therefore, in the instant case, Keith I. Schorr and Susan

25

Schorr, as parents of the decedent, may not make a claim for loss of consortium.

Therefore, Plaintiffs' claims in paragraphs 35 and 36, and as incorporated

into/referred to in paragraphs 73, for the loss of consortium of their deceased

child, should be dismissed for failure to state a claim upon which relief may be

granted.

### D. Holy Spirit Hospital's conduct does not rise to the level of "gross negligence."

In Count III of the First Amended Complaint, Plaintiffs allege gross

negligence against Holy Spirit Hospital.  See First Amended Complaint, Count III.

As stated previously, the Pennsylvania Mental Health Procedures Act, 50

P.S. Section 7101 et seq. ["MHPA"] provides that psychiatrists and mental health

facilities cannot be held liable absent a showing that conduct rose to the level of

"willful misconduct" or "gross negligence."  50 P.S. Section 7114.

The MHPA does not define "gross negligence" or "willful misconduct."

However, the Pennsylvania Superior Court thoroughly analyzed the concept of

gross negligence under the MHPA in Bloom v. Dubois Regional Medical Center,

409 Pa. Super. 83, 597 A.2d 671 (1991).  The Bloom court stated:

> It appears that the legislature intended to require that liability be
> premised on facts indicating more egregiously deviant conduct than
> ordinary carelessness, inadvertence, laxity or indifference.  We hold
> that the legislature intended the term gross negligence to mean a form

26

of negligence where the facts support <u>substantially more than ordinary carelessness, inadvertence, laxity or indifference</u>. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

<u>Bloom</u>, 409 Pa. Super at 98, 597 A.2d at 679.

"Willful misconduct" was defined by the Pennsylvania Supreme Court in <u>Evans v. Philadelphia Transportation Company</u>, 418 Pa. 567, 212 A.2d 440 (1965). The Court stated, "[wailful misconduct means that the actor desired to bring about the results that followed, or at least, that he was aware that it was substantially certain to ensue." <u>Evans</u>, 418 Pa. at 573-574, 212 A.2d at 443. <u>See also</u> <u>King v. Breach</u>, 115 Pa. Commw. 355, 540 A.2d 976 (1988).

In the instant case, the facts of record reveal that no triable issue of material fact has been raised which would tend to prove that Holy Spirit Hospital's treatment of Plaintiffs' Decedent constituted "gross negligence" or "willful misconduct" under the MHPA. Holy Spirit Hospital did not deny the Decedent treatment. Rather, the Decedent was assessed, evaluated and/or treated by crisis intervention workers, nurses, and a physician, Dr. David Spurrier. Moreover, Decedent was placed in Room 17, a secured seclusion room in the hospital's emergency department. The door to Room 17 was closed and locked "as far as the inside person [the Decedent] was concerned" at the time of the events alleged in

27

the First Amended Complaint.  (See Exhibit "D," p. 24, lines 4-11).  Also, the door in Room 17 has an observation window from which healthcare providers and crisis workers can observe the patient within.  (See Exhibit "E," p. 17, lines 11-14).

Also, Holy Spirit Hospital employed well-qualified nurses, physicians, crisis workers and security personnel, as set forth in paragraphs 38 to 43 of Defendant Holy Spirit Hospital's Motion for Summary Judgment which are incorporated herein by reference.

Because the record does not support allegations of "gross negligence" or "willful misconduct" on the part of Holy Spirit Hospital, the MHPA immunity provision bars liability under Count III (Negligence) of Plaintiffs' First Amended Complaint.  Therefore, Plaintiffs' claims of gross negligence against Holy Spirit Hospital should be dismissed with prejudice.

V.    CONCLUSION

For the reasons stated above, Defendant Holy Spirit Hospital's Motion for Summary Judgment should be granted and Plaintiffs' claims under 42 U.S.C.

28

§1983 and Plaintiffs' claims for ordinary negligence, gross negligence, and filial

consortium should be dismissed with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

METTE, EVANS & WOODSIDE

By: _____

JOHN F. YARNEK, ESQUIRE
Sup. Ct. I. D. No. 55741
3401 North Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000
Attorneys for Defendants Holy Spirit
Hospital and Cumberland County
and Cumberland County

</div>

Date:  February 28, 2003

29

## CERTIFICATE OF SERVICE

        I, JOHN F. YANINEK, ESQUIRE, hereby certify that I am serving a copy of the foregoing document upon the person(s) and in the manner indicated below, which service satisfies the requirements of the Federal Rules of Civil Procedure, by depositing a copy of same in the United States Mail at Harrisburg, Pennsylvania, with first-class postage, prepaid, as follows:

Gerald J. Williams, Esquire
Williams, Cuker and Berezofsky
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 800
Philadelphia, PA 19103-1895

David J. MacMain, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Stephen S. Pennington, Esquire
One Penn Center at Suburban
Station Suite 800
1617 JFK Boulevard
Philadelphia, PA 19103

METTE, EVANS & WOODSIDE

By: _____
John F. Yaninek, Esquire
Sup. Ct. I.D. No. 55741
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000
Attorneys for Defendants Holy Spirit
Hospital and Cumberland County

DATE:  February 28, 2003