

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, in their own right and as personal representatives of the Estate of RYAN K. SCHORR,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>WEST SHORE REGIONAL POLICE DEPARTMENT, HOWARD DOUGHERTY, CUMBERLAND COUNTY, and HOLY SPIRIT HOSPITAL,<br>　　　　Defendants. | : JURY TRIAL DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>: NO.:  1:CV-01-0930<br>:<br>:<br>:<br>:<br>:<br>:<br>: HONORABLE YVETTE KANE |

**DEFENDANT CUMBERLAND COUNTY'S MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

AND NOW, comes the Defendant, CUMBERLAND COUNTY, by and

through its attorneys, Mette, Evans & Woodside, and files this Motion for

Summary Judgment pursuant to Fed. R. Civ. P. 56, and in support thereof avers as follows:

1.   Plaintiffs Keith I. Schorr and Susan Schorr, in their own right and as personal representatives of the Estate of Ryan K. Schorr ("the Defendant") commenced an action for damages and other relief arising from the death of the Decedent (their son) who, after a violent struggle with two police officers of the Defendant West Shore Regional Police Department, was fatally shot by one of the officers.

2.   Plaintiffs filed a Complaint on May 25, 2001 and a First Amended Complaint on August 2, 2001, naming Cumberland County as a Defendant.

3.   Cumberland County is a governmental unit organized under Pennsylvania law.

4.   Cumberland County has contracted with Holy Spirit Hospital to provide certain crisis intervention services within Cumberland County, Pennsylvania.

5.   The only viable Count remaining in this case against Defendant Cumberland County is Count II, which is brought pursuant to 42 U.S.C. §1983 and alleges violation of the Fourteenth Amendment of the United States Constitution.

2

6. In Count II of the Amended Complaint, Plaintiffs allege that Cumberland County violated the Decedent's rights under the Fourteenth Amendment of the United States Constitution with "deliberate indifference."

7. Plaintiffs allege that Cumberland County acted with "deliberate indifference" in three areas: (1) employment of health care providers who would provide treatment to persons detained under §302; (2) training of physicians, crisis intervention workers, nurses and other personnel who would treat persons detained under §302; and (3) maintenance of adequate crisis intervention facilities and staff.

8. Cumberland County contracted with Holy Spirit Hospital to provide crisis intervention services to county residents by utilizing Holy Spirit Hospital employees and the hospital's facilities.

9. No officials or employees of Cumberland County had any direct contact with Ryan Schorr during the events described within Plaintiffs' First Amended Complaint.

10. A municipality may not be liable in a §1983 action under the doctrine of *respondeat superior*. Monell v. Department of Social Services, 436 U.S. 658 (1978).

3

11. Any conduct by Holy Spirit Hospital which Plaintiffs contend was violative of Ryan Schorr's rights cannot be imputed to Cumberland County.

12. There are no facts of record to show that Cumberland County's decision to contract with Holy Spirit Hospital for crisis intervention services constituted deliberate indifference to the needs of mentally ill and emotionally disturbed persons within Cumberland County, such as Ryan K. Schorr.

13. Cumberland County attended to the needs of mentally ill and emotionally disturbed persons with quality care by deciding to contract with Holy Spirit Hospital for crisis intervention services.

14. With regard to employment of persons qualified to provide treatment and care to persons detained under §302, Holy Spirit Hospital employed qualified persons at all times relevant to the events alleged in the First Amended Complaint: Carol Joerger, R.N. had worked eleven years as a nurse in the emergency room (See Transcript of Deposition of Carol Joerger, page 9, lines 7-9). Security Guard Cory Graby testified that he had been a security officer at Holy Spirit for five and one-half years and had three years of college (See Exhibit "D", Transcript of Deposition of Cory Graby, page 6). Candice Highfield was a part-time crisis

worker, and a clinical social worker who was "aware of the mental health procedures and law" (See Exhibit "E", Transcript of Deposition of Candice Highfield, page 6). Steve Bucciferro had served nine years as administrative director of Mental Health Services (See Exhibit "F", Transcript of Deposition of Steve Bucciferro, page 5) and twenty-two years experience in healthcare (See Exhibit "F", page 7) (See page 7 of Exhibit "F" for more details). Mercedes Briscese, a part-time crisis worker, had earned her Master's degree in counseling in 1982 and had experience in working with the Capable Adolescent Mothers Program and the Superior Court in New Jersey. (See Exhibit "G", Transcript of Deposition of Mercedes Briscese, page 8, lines 1-10). She also received training in crisis work when she began to work for Holy Spirit Hospital. (See Exhibit "G", page 8, lines 20-25; page 9, lines 1-5).

    15.    Also, with regard to employment of persons qualified to provide treatment and care to persons detained under §302, Steve Bucciferro, administrative director of mental health services, described the training and educational requirements for professional staff who provide Crisis Intervention services. See Exhibit "F", pages 17-19.

16. Bucciferro pointed out that "[t]he professional staff members who provide Crisis Intervention services have to have a minimum of a bachelor's degree training, whether it be in a psychosocial service background, they have to have at least a bachelor's degree." See Exhibit "F", page 17, lines 22-25; page 18, lines 1-4. He also states that:

> RNs, registered nurses, have provided Crisis Intervention services in the past as well, because they've been trained in psychiatric nursing. So we have had RNs. Now, with a minimum educational background, then it's a matter of how much training they may have had elsewhere, experience elsewhere working in either a psychiatric or mental health setting or behavioral health setting, whether it be in drug and alcohol or in other types of counseling centers or experience in that way. That helps in terms of being able to hire that person. If they come with a degree and training but may not have a lot of training with the Crisis, then they'll be trained more here at Holy Spirit with the supervisor and the other crisis workers. So there's a minimum educational and then it depends on the type of experience – working experience they have. That's all taken into account before they're hired.

See Exhibit "F", page 18, lines 6-25; page 19, lines 1-3.

17. Bucciferro also discussed the types of providers who do Crisis Intervention work at Holy Spirit:

> There's no specific title or type of ... provider that would do Crisis. It's more of a general behavioral health specialist professional of a bachelor's level or higher.

6

> They may have a Masters Degree or they may have more
> of a postgraduate degree, but they are behavioral health
> specialists for behavioral health generalists more so. An
> RN is a specific category of someone who is a registered
> nurse. You might have a counselor, you might have an
> DNA expert, someone who's gone to school and got a
> masters in social work is a crisis worker so there's no
> specific category other than just a generalist and
> behavioral health or mental health.

See Exhibit "F", page 22, lines 19-25, page 23, lines 1-10.

    18.    Bucciferro also pointed out that Holy Spirit Hospital employs psychiatrists who would have as part of their duties to assist in evaluation of individuals brought in on a §302 involuntary commitment:

> Psychiatrists are employed at Holy Spirit Hospital to
> work within the mental health center, specifically
> holding positions or duties that we need to provide
> service. We have adult psychiatrists who work in our
> inpatient unit, also work in our outpatient clinic and
> program providing outpatient services. We have child
> and adolescent psychiatrists who are hired to provide
> inpatient service and outpatient services to children and
> adolescents. We have psychiatrists who function as
> medical director of the mental health center and we have
> a psychiatrist who works as our clinical director for
> child/adolescent services. ... [A]ll psychiatrists and staff
> that have responsibility to be on-call and to respond to
> the emergency room may be involved with doing a 302
> assessment.

(See Exhibit "F", page 19, lines 17-25, page 20, lines 1-8; page 21, lines 18-21).

7

19. With regard to training people to provide treatment and care pursuant to persons detained under §302, security officer Cory Graby received training in Act 235 (weapons certification in Pennsylvania) and in red alert training, which involves assisting in subduing a combative patient (See Exhibit "D", Transcript of Deposition of Cory Graby, page 7, lines 22-25; page 8, line 1; page 19, lines 6-10). Cory Graby also had certification by International Association of Healthcare Safety and Security ("IAHSS") (See Exhibit "H", page 8, lines 2-5). Charles Sterling, security manager at Holy Spirit Hospital, discussed training that hospital security personnel undertake (See Exhibit "H", pages 33-37). The training includes an initial hospital orientation (See Exhibit "H", page 33, lines 14-15); red alert training on how to deal with aggressive individuals (See Exhibit "H", page 33, lines 18-25; page 34, lines 1-5); the basic and the advanced security officer course offered by the Society of Healthcare Safety and Security (See Exhibit "H", lines 11-17); and violence in the workplace training (Exhibit "H", page 34 lines 19-20).

20. With regard to adequate crisis intervention facilities, Carol Joerger, R.N., who had eleven years experience in the emergency department, testified that Room 17, where the Decedent had been placed, was one of the seclusion rooms in the emergency room (See Exhibit "C", page 14, lines 11-13). The door to Room

17 was closed and was locked "as far as the inside person [the Decedent] was concerned" at the time of the events alleged in the First Amended Complaint (See Exhibit "D", p. 24, lines 4-11). Also, the door in Room 17 has an observation window from which healthcare providers and crisis workers can observe the patient within. (See Exhibit "E", p. 17, lines 11-14.) Carol Joerger, R.N. also testified that the usual §302 commitment procedure involved using Room 17, the secured room. (See Exhibit "C", p. 21, lines 7-12.)

21. With regard to allegations regarding "adequate" staffing, paragraphs 14 to 19 (above) are incorporated herein by reference to show the adequacy of the staff's training, education and experience.

22. Therefore, as demonstrated by the above-cited evidence of record, Cumberland County did not show deliberate indifference with regard to customs, policies or procedures related to their contracting with Holy Spirit Hospital for crisis intervention services.

23. No fact of record pertaining to Cumberland County shows any evidence of deliberate indifference with regard to the selection of Holy Spirit Hospital as a crisis intervention provider.

WHEREFORE, Cumberland County respectfully requests that this Honorable Court enter an order granting its Motion for Summary Judgment

pursuant to Federal Rule of Civil Procedure 56 and dismissing Count II of the First Amended Complaint as to Defendant Cumberland County.

                              Respectfully submitted,

                              **METTE, EVANS & WOODSIDE**

By: _____
John F. Yaninek, Esquire
Sup. Ct. I.D. No. 55741
3401 N. Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000
Attorneys for Defendant Holy Spirit
Hospital and Cumberland County

DATED: February 28, 2003

10

## CERTIFICATE OF NONCONCURRENCE

I, JOHN F. YANINEK, ESQUIRE, counsel for the Defendant Cumberland County, called Stephen S. Pennington, Esquire, counsel for the Plaintiffs, in February, 2003 and he does not concur with the Motion for Summary Judgment of the Defendant Cumberland County Pursuant to Fed. R. Civ. P. 56.

_____
John F. Yaninek

DATE: February 28, 2003

## CERTIFICATE OF SERVICE

I, JOHN F. YANINEK, ESQUIRE, hereby certify that I am serving a copy of the foregoing document upon the person(s) and in the manner indicated below, which service satisfies the requirements of the Federal Rules of Civil Procedure, by depositing a copy of same in the United States Mail at Harrisburg, Pennsylvania, with first-class postage, prepaid, as follows:

Gerald J. Williams, Esquire
Williams, Cuker and Berezofsky
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 800
Philadelphia, PA 19103-1895

David J. MacMain, Esquire
Mongtomery, McCracken,
Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Stephen S. Pennington, Esquire
Williams, Cuker and Berezofsky
One Penn Center at Suburban
1617 JFK Boulevard
Station Suite 800
Philadelphia PA 19103

METTE, EVANS & WOODSIDE

By: _____
John F. Yaninek, Esquire
Sup. Ct. I.D. No. 55741
3401 North Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000

Attorneys for Defendants Holy Spirit Hospital and Cumberland County

Date: February 28, 2003