## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, In their own right and as personal representatives of the Estate of RYAN K. SCHORR, | : : : : | *FILED HARRISBURG, PA* |
| Plaintiffs, | : | No. 1:CV-01-0930    *FEB 2 8 2003* |
| | : | *MARY E. D'ANDREA, CLERK* |
| vs. | : | *Per_____ Deputy Clerk* |
| WEST SHORE REGIONAL POLICE COMMISSION, HOWARD DOUGHERTY, CUMBERLAND COUNTY, ROBERT GORIL and HOLY SPIRIT HOSPITAL, | : : : : | The Honorable Yvette Kane |
| Defendants. | : : | |

**DEFENDANTS WEST SHORE REGIONAL POLICE COMMISSION AND
CHIEF HOWARD DOUGHERTY'S BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................... 1

II.   PROCEDURAL HISTORY........................................................................ 2

III.  STATEMENT OF FACTS ........................................................................ 3

IV.   STATEMENT OF QUESTIONS INVOLVED.......................................... 3

V.    STANDARD OF REVIEW ....................................................................... 3

VI.   ARGUMENT............................................................................................. 4

    A.    This Court Should Enter Summary Judgment in Favor of the West Shore Police Department on Plaintiffs' Section 1983 Claim ........................................... 4

        1.    Plaintiffs Cannot Establish the Deprivation of a Constitutional Right Because the Use of Deadly Force Was Justified............................. 5

        2.    Plaintiffs Cannot Demonstrate That the West Shore Police Department Had a Constitutionally Deficient Policy or Custom.............. 9

            a.    A Finding of Deliberate Indifference Is Precluded Because the Training Met the Standards of State Law ............................. 10

            b.    A Finding of Deliberate Indifference Is Also Precluded Because Plaintiffs Cannot Demonstrate That the West Shore Police Department Had Notice That Any Policy Was Inadequate .................................................................................. 12

        3.    Plaintiffs Cannot Demonstrate the Requisite Causation.......................... 15

    B.    This Court Should Enter Summary Judgment on Plaintiffs' Section 1983 Claim Against Chief Dougherty ........................................................................ 16

    C.    This Court Should Enter Summary Judgment in Favor of the West Shore Police Department on Plaintiffs' ADA Claim ..................................................... 18

        1.    Plaintiffs' ADA Claim Is Not Legally Cognizable.................................. 18

**TABLE OF CONTENTS**
(continued)

Page

2.    Plaintiffs Cannot Point to Evidence Which Can Be Used to Support Their ADA Claim. .................................................................... 19

    a.    Plaintiffs Cannot Demonstrate That Decedent Was Denied the Benefits of Police Training Because of His Disability. ......... 19

    b.    Plaintiffs Cannot Demonstrate That the Use of Deadly Force Was "Objectively Unreasonable" ...................................... 20

VII.    CONCLUSION.............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999) ............................................................6,7

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ......................................................4

Amirault v. City of Roswell, No. 6:95-CV-422, 1996
     WL 391986 (D.N.M. July 11, 1996). ..............................................................18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ..............................................4

Anthony v. City of New York, No. 00 Civ. 4688(DLC),
     2001 WL 741743 (S.D.N.Y. July 2, 2001) ......................................................20

Bates v. Chesterfield County, 216 F.3d 367 (4th Cir. 2000) ................................19, 20, 21

Blanche Road Corp. v. Bensalem Township, 57 F.3d 253
     (3d Cir. 1995) ..............................................................................................16, 17

Bonenberger v. Plymouth Township, 132 F.3d 20
     (3d Cir. 1997) ..............................................................................................5, 12, 14

Brown v. Commonwealth of Pennsylvania Dep't of
Health Emergency Med. Servs., No. 01-3234,
     2003 WL 148919 (3d Cir. Jan. 22, 2003) ........................................4, 5, 9, 12, 15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..........................................................4

City of Canton v. Harris, 489 U.S. 378 (1989) ..........................................9, 10, 12, 15

Colbert v. Angstadt, 169 F. Supp. 2d 352
     (E.D. Pa. 2001) ............................................................................................11

Dansby v. Borough of Paulsboro, Civ. A. No. 92-4558(JEI)
     1995 WL 352995 (D.N.J. June 7, 1995), aff'd,
     79 F.3d 1137 (3d Cir. 1996) ........................................................................14

Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994) ..........................................5

Graham v. Connor, 490 U.S. 386 (1988) ..................................................................6, 17

Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000) ..............................................18, 19, 20

### TABLE OF AUTHORITIES
#### (continued)

Page(s)

Jackson v. Marsh, 551 F. Supp. 1091 (D. Colo. 1982) ................................8

Johnson v. City of Milwaukee, 41 F. Supp. 2d 917
    (E.D. Wis. Feb. 25, 1999) ........................................................10

Kentucky v. Graham, 473 U.S. 159 (1985) .......................................17

Lewis v. City of Irvine, 899 F.2d 451 (6th Cir. 1990) ........................10

Monell v. Department of Social Servs., 436 U.S. 658
    (1978) ..................................................................5, 9, 15, 16

Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998) .............12, 14, 18

Patrice v. Murphy, 43 F. Supp. 2d 1156 (W.D. Wash. 1999) ..............18

Pahle v. Colebrookdale Township, 227 F. Supp. 2d 361
    (E.D. Pa. 2002) .....................................................................17

Pena v. Leombruni, 200 F.3d 1031 (7th Cir. 1999) ..........................14

Rosen v. Montgomery County, 121 F.3d 154
    (4th Cir. 1997) .....................................................................18

Ross v. Town of Austin, No. NA 01-15-C-B/K, 2002
    WL 31160139 (S.D. Ind. Sept. 23, 2002).............................10

Satterfield v. Borough of Schuykill Haven,
    12 F.Supp. 2d 423 (E.D. Pa. 1998) ....................................17

Tapia v. City of Greenwood, 965 F.2d 336
    (7th Cir. 1992) ...........................................................10, 11, 12

Tennessee v. Garner, 471 U.S. 1 (1985) ...........................................6

White v. Talboys, 573 F. Supp. 49 (D. Colo. 1983) ..........................8

Wyche v. City of Franklinton, 837 F. Supp. 137 (E.D.N.C. 1993) ...........14

Williams v. Musser, No. 94 C 4140, 1997 WL 403509
    (N.D. Ill. July 16, 1997)........................................................11

## I.    **INTRODUCTION**

This case arises from an unfortunate set of circumstances involving the death of Plaintiffs' son, Ryan Schorr ("Decedent"). On the morning of November 18, 2000, Decedent – who suffered from a bipolar disorder – was ordered to be involuntary committed. Officers Gary Berresford and Harry Hart of the West Shore Regional Police Commission ("WSPD") were assigned to execute the involuntary commitment order.[1] They went to Decedent's house and transported him to Holy Spirit Hospital without incident.

Shortly thereafter, the officers learned that Decedent had escaped from the hospital and fled to his home. When the officers returned to Decedent's house, Decedent ambushed them and initiated a violent assault. During the course of the struggle, Decedent grabbed Officer Berresford's gun and managed to shoot the officer's finger off and then proceeded to attack the officers with a knife, an air rifle and metal pots. Ultimately, Officer Hart was forced to shoot Decedent.

Following the shooting, the Cumberland County District Attorney's Office convened a grand jury, which conducted a seven-week investigation of the incident. The Grand Jury concluded that the shooting was justified as it was necessary to prevent the death or serious bodily injury of Officers Berresford and Hart.

Plaintiffs, who are the parents of Decedent, filed the instant suit against various defendants, including the WSPD and its Chief, Howard Dougherty. At issue here is a claim

---

[1] The WSPD is an entity organized under Pennsylvania law and created by an agreement between the Boroughs of Lemoyne and Wormleysburg to provide police services to both boroughs. Compl. ¶ 7, Ex. "A." All of the materials and unreported decisions cited herein are included as exhibits in the appendix which accompanies this brief.

under 42 U.S.C. § 1983 ("Section 1983") against the WSPD and Chief Dougherty and a claim

under the Americans with Disabilities Act ("ADA") against only the WSPD.

What sets this case apart from others of its kind is that the Grand Jury has already done a

factual investigation of the incident at issue. While in most cases, the parties and lawyers are left

with the task of compiling the evidence, the Grand Jury has already done most of this work. It

issued a 36-page report, detailing all of the relevant happenings. Although Plaintiffs' claims

require them to demonstrate that the officers acted unreasonably, this record shows that the

shooting was entirely justified. Because Plaintiffs cannot refute this evidence, summary

judgment is appropriate.

Plaintiffs' claims also require them to demonstrate that the WSPD and Chief Howard

Dougherty were so deficient in providing their officers with proper training that such deficiency

constituted a deliberate indifference to the rights of citizens. The evidence produced in

discovery shows that Officers Berresford and Hart received the police training that is required

under Pennsylvania law and that such training was appropriate and sufficient. For this additional

reason, this Court should enter summary judgment in favor of the WSPD and Chief Dougherty.

## II.    **PROCEDURAL HISTORY**

On May 25, 2000, Plaintiffs commenced this instant lawsuit. In their First Amended

Complaint ("Complaint"), Plaintiffs asserted claims against the WSPD and Chief Dougherty

under Section 1983 (Count I), Section 504 of the Rehabilitation Act (Count IV), Title II of the

ADA (Count V), and Pennsylvania law for wrongful death and survival (Counts VI and VII).

See Compl., Ex. "A."

On September 5, 2002, the parties filed a Stipulation of Partial Dismissal, stipulating to

the dismissal of the claims raised under Section 504 of the Rehabilitation Act in Count IV of the

Complaint. See Stipulation, dated Sept. 5, 2002, Ex. "B."

On February 10, 2003, the Court granted Plaintiffs' unopposed motion to dismiss the ADA claim against Chief Dougherty raised in Count V and the wrongful death and survival claims against both the WSPD and Chief Dougherty raised in Counts VI and VII. See Order, dated Feb. 10, 2003, Ex. "C."

Also on February 10, 2003, the Court issued a Memorandum and Order in which it denied the motion to dismiss that had been filed by the WSPD and Chief Dougherty. See Mem. Op., dated Feb. 13, 2003, Ex. "D." The claims that currently remain against these two Defendants are a claim under Section 1983 against both the WSPD and Chief Dougherty (Count I) and a claim under Title II of the ADA against only the WSPD (Count V).

## III.    STATEMENT OF FACTS

Defendants WSPD and Chief Dougherty respectfully refer the Court to their Statement of Material Facts in Support of Their Motion for Summary Judgment.

## IV.    STATEMENT OF QUESTIONS INVOLVED

    A.    Should this Court enter summary judgment in favor of the WSPD on Plaintiffs' Section 1983 Claim?

    B.    Should this Court enter summary judgment in favor of Chief Dougherty on Plaintiffs' Section 1983 Claim?

    C.    Should this Court enter summary judgment in favor of the WSPD on Plaintiffs' ADA Claim?

## V.    STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing

-3-

sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case." Catrett, 477 U.S. at 325. Although all evidence must be viewed in a light most favorable to the non-moving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## VI.  ARGUMENT

   A.  This Court Should Enter Summary Judgment in Favor of the WSPD on Plaintiffs' Section 1983 Claim

In Count I of their Complaint, Plaintiffs assert a claim against the WSPD under 42 U.S.C. § 1983. That statute provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

By its own terms, Section 1983 does not create any substantive rights. Instead, the statute provides remedies for the deprivations of rights that are established elsewhere in the Constitution or federal laws. Brown v. Commonwealth of Pennsylvania Dep't of Health Emergency Med. Servs., No. 01-3234, 2003 WL 148919, at *2 (3d Cir. Jan. 22, 2003), Ex. "M."

-4-

In the landmark case of <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 691 (1978), the United States Supreme Court held that a municipality or other local government unit cannot be held liable under Section 1983 pursuant to a theory of <u>respondeat superior</u>. The Court further held that municipalities and other local government units were "persons" within the meaning of Section 1983 and that plaintiffs could therefore maintain Section 1983 actions against such entities. <u>Id.</u> at 690; <u>see also</u> <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (holding that a police department is treated as a municipality or local government unit for purposes of section 1983 liability).

It is well settled that to establish liability under Section 1983 against a local government unit, a plaintiff must demonstrate:  (1) the deprivation of a Constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation. <u>Monell</u>, 436 U.S. at 691; <u>Brown</u>, 2003 WL 148919, at *7, Ex. "M."[2] Because Plaintiffs in this case cannot demonstrate any of these three elements, summary judgment in favor of the WSPD on Plaintiffs' Section 1983 claim is warranted.

    1.    Plaintiffs Cannot Establish the Deprivation of a Constitutional Right Because the Use of Deadly Force Was Justified

In their Complaint, Plaintiffs allege that two constitutional violations occurred.  First, they alleged that Decedent was deprived of his right to life in violation of the Fourteenth Amendment. <u>See</u> Compl. ¶¶ 36, 47, Ex. "A." Second (and similarly), Plaintiffs allege that they

---

[2] On January 22, 2003, the Third Circuit in <u>Brown</u> explicitly rejected the notion that a plaintiff may prevail on a Section 1983 claim without proving that the deprivation of Constitutional right occurred. The Third Circuit explained:

    In <u>Fagan [v. City of Vineland</u>, 22 F.3d 1283, 1292 (3d Cir. 1994)], we held "that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." <u>However, for there to be municipal liability, there still must be a violation of the plaintiff's Constitutional rights.</u>
<u>Brown</u>, 2003 WL 148919, at *8 (emphasis added).

-5-

were deprived of their interest in Decedent's life in violation of the Fourteenth Amendment of the Constitution. Id. Because the uncontradicted evidence shows that the taking of Decedent's life was an act of justified self defense, Plaintiffs cannot meet their summary judgment burden of coming forward with facts to show that the deprivation of a Constitutional right occurred.

The Supreme Court has held that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'" Graham v. Connor, 490 U.S. 386, 395 (1988).

Here, Plaintiffs theorize that a constitutional violation occurred when Officer Hart shot and thereby seized Decedent. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (holding that a shooting by a police officer is "obviously" a seizure within the meaning of the Fourth Amendment). Thus, although the Complaint alleges a violation of the substantive due process clause of the Fourteenth Amendment, the constitutionality of the taking of Decedent's life should be analyzed solely by reference to the Fourth Amendment's "reasonableness" standard. Graham, 490 U.S. at 395; Abraham, 183 F.3d at 288.

The Fourth Amendment prohibits "unreasonable" searches and seizures. The Supreme Court has held that it is reasonable – and therefore not a deprivation of a Constitutional right – for a police officer to use deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985); Abraham, 183 F.3d at 288. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The determination of

-6-

reasonableness must allow for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Id. at 396-97; Abraham, 183 F.3d at 289.

Here, the evidence shows that on the morning of November 18, 2000, Officers Berresford and Hart were asked to execute a warrant for the involuntary commitment of Decedent. See Grand Jury Report, at 9-10, Ex. "E." Although they initially transported him to Holy Spirit Hospital without incident, Decedent escaped and retreated to his house. Id. When the officers attempted to retrieve Decedent, Decedent ambushed them in his bedroom and engaged in a violent and deadly assault during which he: (1) attacked Officer Berresford, gained control of his gun, and shot off his left ring finger; (2) attempted to stab Officer Hart with a knife; and (3) battered the officers with an air rifle. Id. at 19-25. When Decedent ran out of the bedroom, Officer Hart intentionally refrained from shooting him, recognizing that Decedent was fleeing and that the use of deadly force would not be justified. See Hart Dep. at 37 ("At that point I drew my firearm, and I thought to myself, don't shoot him, he's a mental patient and he's running away from you."), Ex. "H."

Although Decedent disappeared from the bedroom, he returned minutes later armed with large metal pots. See Grand Jury Report, at 24, Ex. "E." Officer Hart explained the final moments of the struggle as follows:

> But I just couldn't believe he came back. And I told him, I said, "Stop, stop, put them down." And he just started swinging, advancing on me and I hollered again "stop," and then he hit me on top of the head with the big pot and I felt my knees buckle and I thought, "you don't have a choice" and I just started shooting him. At that point I knew it was the only way. He was trying to kill us. He was determined to kill us.

Id.

Following the incident, both officers were rushed to the hospital to receive medical treatment for the injuries they sustained during the attack. See Dougherty Dep. at 34-35, Ex. "I." Officer Berresford had lacerations and abrasions on his head, face and back which required 11 stitches, had a bite mark on his right hand and had to have his ring finger on his left hand amputated because of the gunshot wound. See Berresford Dep. at 56-57, Ex. "G"; Document W 00030, Ex. "L." Officer Hart had lacerations and bruises about his body, which required 12 stitches, and suffered a broken nose. See Hart Dep. at 50, 63, Ex. "H"; Document W 00030, Ex. "L."

Based on the record, it is clear that the use of deadly force by Officer Hart was reasonable and justified. During the initial struggle, Officers Berresford and Hart tried to subdue Decedent by using less lethal means, including verbal commands, physical restraints and an ASP baton. See Grand Jury Report, at 19-22, Ex. "E"; Berresford Dep. at 44-51, Ex, "G"; Hart Dep. at 28-37, Ex. "H." Officer Hart did not resort to deadly force until Decedent returned to the bedroom to continue the violent attack and Officer Hart believed that such force was necessary to prevent serious physical harm to himself and Officer Berresford. This is precisely why the Grand Jury concluded that Officer Hart "was justified in using deadly force." See Grand Jury Report, at 35, Ex. "E."

Because the undisputed evidence shows that the use of deadly force was reasonable, Plaintiffs cannot demonstrate the deprivation of a Constitutional right. For this reason alone, this Court should enter summary judgment in favor of the WSPD on Plaintiffs' Section 1983 claim.[3]

---

[3] As noted above, Plaintiffs' second alleged deprivation of a Constitutional right occurred because Plaintiffs were deprived of their interest in Decedent's life. See Compl. ¶¶ 36, 47. Courts have explicitly rejected the notion that such a right is protected by the Constitution. See, e.g., White v. Talboys, 573 F. Supp. 49, 51 (D. Colo. 1983) ("The right to the continued life of offspring is not a cognizable constitutional claim under § 1983); Jackson v. Marsh, 551 F. Supp. 1091, 1094 (D. Colo. 1982) ("None of
(continued ...)

2.    Plaintiffs Cannot Demonstrate That the WSPD Had a Constitutionally
Deficient Policy or Custom

To prevail on the Section 1983 claim, Plaintiffs must not only establish that there was a

deprivation of a constitutional right, but they must also demonstrate that such deprivation was

caused by action taken pursuant to a "municipal policy or custom." Brown, 2003 WL 148919, at

*7 (citing Monell, 436 U.S. at 691). The Supreme Court has held that a municipality's failure to

train its police officers in a relevant respect can be thought of as a policy or custom that is

actionable under Section 1983. City of Canton v. Harris, 489 U.S. 378, 380 (1989); see also

Brown, 2003 WL 148919, at *8, Ex. "M." The Court has further held that the inadequacy of

police training may serve as the basis for Section 1983 liability "only where the failure to train

amounts to deliberate indifference to the rights of persons with whom the police come into

contact." Harris, 489 U.S. at 388; see also Brown, 2003 WL 148919, at *8, Ex. "M." As the

Supreme Court explained:

> In virtually every instance where a person has had his or her constitutional rights
> violated by a city employee, a §1983 plaintiff will be able to point to something
> the city "could have done" to prevent the unfortunate incident. . . . Thus,
> permitting cases against cities for their "failure to train" employees to go forward
> under §1983 on a lesser standard of fault would result in de facto respondent
> superior liability on municipalities – a result we rejected in Monell. . . . It would
> also engage the federal courts in an endless exercise of second-guessing
> municipal employee-training programs. This is an exercise we believe the federal
> courts are ill-suited to undertake, as well as one that would implicate serious
> questions of federalism.

---

(... continued)
the courts which have considered the question directly have concluded that an individual has a protected
liberty right to the continued life of a family member."). Thus, even if Plaintiffs could demonstrate that
the amount of force used by Officer Hart was unreasonable, they could still not establish Section 1983
liability based on the theory that they were deprived of their interest in Decedent's life.

-9-

Harris, 489 U.S. at 392 (citations omitted); see also Lewis v. City of Irvine, 899 F.2d 451, 455 (6th Cir. 1990) ("Whether that training was the best and most comprehensive available has no bearing on the plaintiff's failure to train claim.").

In the instant case, Plaintiffs contend that the WSPD had a deficient policy or custom because it failed to provide additional training to its officers about how to deal with mentally disturbed individuals, execute involuntary commitment orders, avail themselves of available resources for dealing with emotionally disturbed persons and employ instruments of less lethal force. See Compl. ¶¶ 42-44, Ex. "A."[4]

Discovery has made clear that Plaintiffs' claims are not supported by the uncontested evidence. Therefore, Plaintiffs' claim that WSPD acted with "deliberate indifference" fails for two reasons. First, the WSPD provided Officers Berresford and Hart with all of the training that was required to be provided to police officers by Pennsylvania law. Second, Plaintiffs cannot demonstrate that the WSPD had knowledge that additional training was necessary.

> a.   *A Finding of Deliberate Indifference Is Precluded Because the Training Met the Standards of State Law*

Numerous courts have held that where a State imposes training standards, evidence showing adherence to those standards bars any finding that the police department was deliberately indifferent to the need for additional training. See Tapia v. City of Greenwood, 965 F.2d 336, 339 (7th Cir. 1992); Ross v. Town of Austin, No. NA 01-15-C-B/K, 2002 WL 31160139, at *9 (S.D. Ind. Sept. 23, 2002), Ex. "N"; Johnson v. City of Milwaukee, 41 F. Supp.

---

[4] As noted in the WSPD and Chief Dougherty's Statement of Material Facts, Decedent was emotionally disturbed and failed to take his medication to control his behavior. See Grand Jury Report, at 2-3, Ex. "E." Further, he was under the influence of mind-altering drugs, including ecstacy and marijuana. Id. at 27-28. Thus, at the time of the incident, Decedent had multiple problems, all of which were brought on by his own doing and which were well beyond those posed by the typical emotionally disturbed individual.

2d 917, 931 (E.D. Wis. Feb. 25, 1999); <u>Williams v. Musser</u>, No. 94 C 4140, 1997 WL 403509, at

*10 (N.D. Ill. July 16, 1997), Ex. "O."

 In <u>Tapia</u>, for example, police officers conducted a warrantless search of the plaintiff's

home. Following the search, the plaintiff commenced an action against the police department,

alleging that it had failed to train its officers with regard to such searches. At the end of trial, the

jury returned a verdict against the defendant. On appeal, the police department argued that the

evidence was insufficient to establish that the City had a constitutionally deficient program of

training its officers because the training complied with the minimum standards under state law.

The Seventh Circuit agreed, explaining as follows:

> In Indiana, police officer training is governed by state law. Ms. Tapia offered no
> evidence to indicate that the City failed to adhere to the minimum standards for
> training police officers under Indiana law. . . . From this evidence, we cannot say
> that "the need for enhanced training [was] so obvious, and the inadequacy of
> training [was] so likely to result in the violation of constitutional rights, that a jury
> could reasonably attribute to the policymakers a deliberate indifference to those
> training needs."

<u>Id.</u> (citation omitted).

 In Pennsylvania, police officer training is governed by state law. All persons employed

as police officers in the Commonwealth must be certified by the Municipal Police Officers

Education and Training Commission ("MPOETC"). <u>See</u> 53 Pa. C.S.A. § 2161, <u>et seq.</u>; <u>see also</u>

<u>Colbert v. Angstadt</u>, 169 F. Supp. 2d 352, 358 n.9 (E.D. Pa. 2001). As a requirement for

continued certification, all police officers must receive both basic training (i.e. "Act 120"

training) and annual training (i.e. "Act 180" training). <u>Id.</u>; <u>see also</u> Dougherty Dep. at 17-19, 58-

59, Ex. "I." At the time of the shooting incident on November 18, 2000, both Officer Berresford

and Hart were certified and in good standing with MPOETC. <u>See</u> Grand Jury Report, at 29, Ex.

"E." Thus, the officers were properly trained under the standards set by the Commonwealth of

Pennsylvania.

-11-

Moreover, prior to the incident involving Decedent, both officers had received training about how to deal with emotionally disturbed individuals. <u>See</u> Berresford Dep. at 82-83, Ex. "G"; Hart Dep. at 65, Ex. "H." They had also handled various emotionally-disturbed person calls and served numerous involuntary commitment warrants, all without any difficulties, problems, or complaints whatsoever. <u>See</u> Berresford Dep. at 82-83, Ex. "G"; Hart Dep. at 12-13, 66, Ex. "H."

Because the WSPD provided Officers Berresford and Hart with all of the training required under Pennsylvania law, and additional training beyond what the law required, Plaintiffs cannot establish that the WSPD was deliberately indifferent to the need for additional training. <u>See</u> <u>Tapia</u>, 965 F.2d at 339. Without such a showing, Plaintiffs cannot demonstrate a requisite element of their Section 1983 claim. <u>See</u> <u>Harris</u>, 489 U.S. at 388; <u>see also</u> <u>Brown</u>, 2003 WL 148919, at *8.

       *b.*     *A Finding of Deliberate Indifference Is Also Precluded Because Plaintiffs Cannot Demonstrate That the WSPD Had Notice That Any Policy Was Inadequate*

As noted above, the Supreme Court has held that proof of deliberate indifference by the local government to the rights of persons with whom police come into contact is required for a claim of inadequate training under Section 1983. <u>Harris</u>, 489 U.S. at 388. To establish that a failure to train was a result of deliberate indifference on the part of a local government unit, a plaintiff must demonstrate that: (i) the supervisor had contemporaneous knowledge of the offending incident or had knowledge of a prior pattern of similar incidents; and (ii) the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. <u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d Cir. 1998); <u>Bonenberger</u>, 132 F.3d at 25; <u>see also</u> <u>Harris</u>, 489 U.S. at 390 n.10 (holding that a Section 1982

-12-

plaintiff must establish that "the need for further training must have been plainly obvious to the city policymakers who, nevertheless, are 'deliberately indifferent' to the need").

Here, it is indisputable that Chief Dougherty, the supervisor of Officers Berresford and Hart, did not have contemporaneous knowledge of the incident involving Decedent. The record shows that Chief Dougherty was not involved with the officers' encounter with Decedent in any way as he was not even on duty at the time. See Dougherty Dep. at 41, Ex. "I."

It is likewise indisputable that Chief Dougherty had no knowledge of a pattern of incidents similar to the one involving Decedent. To the contrary, in the three year period between January 1, 1998 and December 31, 2000, officers of the WSPD had executed involuntary commitment orders a total of fifteen (15) times, and, aside from the one involving Decedent, none of them had resulted in either the use of force by police officers or physical injury to anyone. See Responses to Plaintiffs' First Set of Interrogatories addressed to WSPD, at 10-11, Ex. "J." Further, in the ten (10) years preceding the incident with Decedent, there had never been a shooting involving an officer of the WSPD. See Dougherty Dep. at 62, Ex. "I."

Moreover, Plaintiffs cannot point to any inaction on the part of Chief Dougherty which could be used to suggest that he approved of any improper police tactics. Chief Dougherty testified that no complaints had ever been filed against either Officer Berresford or Hart prior to the shooting incident. Id. at 61-62. He also testified that there had never been any problems brought to his attention about the way involuntary commitment orders were handled. Id. Indeed, both Officers Berresford and Hart had received training about dealing with emotionally disturbed people and executing involuntary commitment orders. See Berresford Dep. at 80-83, Ex. "G"; Hart Dep. at 7, 65-68, Ex. "H."

-13-

In case like this one – where the record is entirely devoid of any evidence that a police department had any knowledge that there had been a pattern of offending incidents – courts have routinely entered summary judgment against the plaintiffs. For example, in Pena v. Leombruni, 200 F.3d 1031 (7th Cir. 1999), the Seventh Circuit affirmed the trial court's entry of summary judgment where the plaintiffs had failed to come forward with evidence to show that the police department had been deliberately indifferent to the need for training on how to deal with emotional disturbed individuals. The Seventh Circuit explained:

> If Winnebago County had seen a rash of police killings of crazy people and it was well understood that these killings could have been avoided by the adoption of measures that would adequately protect the endangered police, then the failure to take these measures might, we may assume without having to decide, be found to manifest deliberate indifference to the rights of such people. But the plaintiffs made no effort to establish the premises of such an argument.

Pena, 200 F.3d at 1033-34 (citations omitted); see also Dansby v. Borough of Paulsboro, Civ.A. No. 92-4558(JEI), 1995 WL 352995, at *16 (D.N.J. June 7, 1995), aff'd, 79 F.3d 1137 (3d Cir. 1996) (granting summary judgment where "the current record . . . does not show that Paulsboro policymakers knew that the police were violating the civil rights of black community members and exhibited deliberate indifference to these violations."); Wyche v. City of Franklinton, 837 F. Supp. 137, 145 (E.D.N.C. 1993) (granting summary judgment where "[t]he plaintiff has presented no evidence indicating . . . that past encounters with mentally disturbed persons resulted in violence or injury.").

Plaintiffs cannot point to any evidence which would show that the WSPD had any knowledge that there had been a pattern of incidents like the one at issue in this case. Such evidence is essential to prove that the WSPD was deliberately indifferent to the rights of persons with whom the police came into contact. See Montgomery, 159 F.3d at 127; Bonenberger, 132 F.3d at 25. Without a showing of prior problems, and in turn, deliberate indifference to such

-14-

problems, Plaintiffs simply do not have the evidentiary support for a critical element of their

Section 1983 claim.

        3.        Plaintiffs Cannot Demonstrate the Requisite Causation

     Finally, to prevail on a Section 1983 claim, a plaintiff must also establish that there is a

"causal link" between the failure to train and the alleged Constitutional deprivation. Harris, 489

U.S. at 385; Brown, 2003 WL 148919, at *8. A local government unit can only be liable under

Section 1983 where its failure to train is a "moving force" behind the Constitutional violation.

Harris, 489 U.S. at 389; Monell, 436 U.S. at 694.

     Although Plaintiffs allege that the WSPD's failure to train was the cause of the shooting,

they cannot point to any courses or other types of training that would have altered the outcome.

The record shows that in the years following the incident involving Decedent, MPOETC

introduced mandatory courses that were aimed at assisting officers in the recognition of various

disabilities. See Doc. No. W00203-04, Ex. "K." Both Officers Berresford and Hart have since

taken these courses and testified that there was nothing that they learned which would have made

them handle the incident differently as the courses merely re-affirmed what they had already

been taught over the course of their more than 25 year-long careers. See Berresford Dep. at 83-

84, Ex. "G"; Hart Dep. at 68-69, Ex. "H."

     Early on in this case, Plaintiffs theorized that the WSPD's failure to train its officers on

the use of less lethal means of force (such as mace or pepper spray) was a cause of the alleged

deprivation of a Constitutional right. Officer Berresford addressed this argument head on at his

deposition and quickly disproved Plaintiffs' theory. He testified that he had indeed received

training on the use of these instruments of force while an employee of the WSPD and at his prior

job. See Berresford Dep. at 80-81. Ex. "G." He explained, however, that mace and pepper spray

-15-

have been known not to be effective on individuals, like Decedent, who have a mental illness or who are under the influence of some controlled substance. Id. at 81.

Absent from the record is evidence to suggest that the WSPD's alleged failure to train Officers Berresford and Hart (in any respect) was the moving force behind Decedent's loss of life. In fact, the evidence demonstrates the contrary. Both officers had (1) received training and (2) had handled similar calls over the course of their careers, all without problem, incident, or complaint. See Berresford Dep. at 82-84, Ex. "G"; Hart Dep. at 66-69, Ex. "H." They handled the initial call with Schorr without problem or incident and were able to take him into custody and deliver him to Holy Spirit Hospital without any problem whatsoever. See Grand Jury Report, at 11-12, Ex. "E." This clearly demonstrates that the officers were – as they confirmed at their depositions – properly trained to deal with calls of this nature. Summary judgment in favor of the WSPD on Plaintiffs' Section 1983 is therefore warranted for this reason as well.

B.    This Court Should Enter Summary Judgment on Plaintiffs' Section 1983 Claim Against Chief Dougherty

In Count I of their Complaint, Plaintiffs also assert a Section 1983 claim against Chief Dougherty. It is well settled that a plaintiff cannot obtain relief from a supervisor under a theory of respondeat superior. Monell, 436 U.S. at 691; Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 263 (3d Cir. 1995). A plaintiff may, however, seek relief under Section 1983 against a supervisor by naming the supervisor as a defendant in either his individual capacity or in his official capacity. Here, Plaintiffs' Complaint is silent as to which capacity they seek to impose liability against Chief Dougherty. Regardless of whether Plaintiffs are suing him in his individual capacity or in his official capacity as the Chief of Police, summary judgment in Chief Dougherty's favor is proper.

-16-

In order to prevail in a Section 1983 claim against a supervisor in his "individual" capacity, a plaintiff must demonstrate that: (1) the deprivation of a Constitutional right occurred; and (2) the supervisor knew of the offending conduct and approved it. <u>Blanche Road</u>, 57 F.3d at 263; <u>Pahle v. Colebrookdale Township</u>, 227 F. Supp. 2d 361, 369 (E.D. Pa. 2002). As discussed above in Section V.A.1., Plaintiffs cannot demonstrate that the deprivation of Constitutional right occurred because there is no genuine issue as to the material facts which show that the use of deadly force was objectively reasonable. Similarly, Plaintiffs cannot point to any evidence which would show that Chief Dougherty knew of and sanctioned any unlawful conduct. Chief Dougherty testified that his department typically served about four (4) involuntary commitment warrants per year and that his officers were trained to do so in accordance the procedures set forth by Pennsylvania's Mental Health Act. <u>See</u> Dougherty Dep. at 14-15, 17, Ex. "I." He further testified that prior to the incident involving Decedent, there had been no problems brought to his attention regarding the way involuntary commitment orders were handled by officers under his supervision. <u>See</u> Dougherty Dep. at 61, Ex. "I." Because the record is devoid of the facts that are needed to support their Section 1983 claim against Chief Dougherty, summary judgment is warranted.

To the extent that Plaintiffs seek to recover from Chief Dougherty in his "official" capacity, the result should be no different. Naming a government official in his official capacity is the equivalent of naming the governmental entity as a party. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985). Not surprisingly, therefore, courts have dismissed officials named in their official capacity when the entity they represent is also a defendant on the ground that it is redundant and unnecessary to have both be part of the lawsuit. <u>See, e.g.</u>, <u>Satterfield v. Borough</u>

-17-

of Schuykill Haven, 12 F. Supp. 2d 423, 431-32 (E.D. Pa. 1998). Since Plaintiffs have already named the WSPD as a defendant, there is no reason to have Chief Dougherty be part of this case.

      C.    This Court Should Enter Summary Judgment in Favor of the WSPD on Plaintiffs' ADA Claim

In Count V of their Complaint, Plaintiffs assert a claim against the WSPD under Title II of the ADA. This Court should enter summary judgment against Plaintiffs for two reasons. First, Plaintiffs' ADA claim is not legally cognizable as most courts have held that on-the-street actions of police officers do not fall within the ambit of the ADA. Second, even if Plaintiffs' claim were legally cognizable, Plaintiffs cannot prevail because they cannot demonstrate that Decedent was denied the benefits of police training because of his disability or that the conduct of Officers Berresford and Hart were objectively unreasonable.

      1.    Plaintiffs' ADA Claim Is Not Legally Cognizable

In its motion to dismiss, the WSPD argued that Plaintiffs could not state a valid claim under the ADA. It contended that ADA claims which are based on police officers' on-the-street responses to disturbances and other similar incidents – such as the claim here – are not legally cognizable. See Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000); Rosen v. Montgomery County, 121 F.3d 154, 157 (4th Cir. 1997); Patrice v. Murphy, 43 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999); Amirault v. City of Roswell, No. 6:95-CV-422, 1996 WL 391986, at *6 (D.N.M. July 11, 1996), aff'd, 120 F.3d 270 (10th Cir. 1997).

In its Memorandum and Order dated February 13, 2003, this Court rejected the WSPD's argument, predicting that that the Third Circuit would hold otherwise. See Mem. Op., dated Feb. 13, 2003, at 10-11, Ex. "D." The WSPD respectfully disagrees with this Court's ruling and re-asserts and preserves the arguments relating to Plaintiffs' ADA claim that were set forth in its motion to dismiss.

-18-

2.    Plaintiffs Cannot Point to Evidence Which Can Be Used to Support Their
      ADA Claim

    *a.*    *Plaintiffs Cannot Demonstrate That Decedent Was Denied the*
        *Benefits of Police Training Because of His Disability*

Title II of the ADA provides, in pertinent part, as follows:

[N]o qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the services, programs,
or activities of a public entity, or be subjected to discrimination by any such
entity.

42 U.S.C. §12132.

The plain language of the statute makes clear that to establish a claim under Title II of the

ADA, a disabled person must show that he was discriminated against "by reason of such

disability." Id. Because Plaintiffs cannot make this threshold showing, their claim under the

ADA fails.

In Bates v. Chesterfield County, 216 F.3d 367 (4th Cir. 2000), police responded to a

complaint that the plaintiff had unlawfully entered the complainant's garage and fled upon being

confronted. When officers located the plaintiff, a struggle ensued during which the plaintiff

assaulted several officers. Police learned later that the plaintiff suffered from autism.

Plaintiff commenced a suit against the officers under the ADA. The trial court granted

summary judgment in favor of the defendants, finding that the plaintiff could not establish an

ADA violation. On appeal, the Fourth Circuit affirmed and explained as follows:

And Bates was not arrested because of his disability. Rather, he was arrested
because there was probable cause to believe that he assaulted a police officer.
Thus the stop, the use of force, and the arrest of Bates were not by reason of
Bates' disability, but because of Bates' objectively verifiable misconduct.

Bates, 216 F.3d at 373 (emphasis added); see also Hainze v. Richards, 207 F.3d 795, 801 (5th

Cir. 2000) ("Hainze was not denied the benefits and protections of Williamson County's mental

-19-

health training <u>by</u> the County, Sheriff Richards, or the officers.  Rather, Hainze's assault of

[Deputy] Allison with a deadly weapon denied him the benefits of that program.").

Here, Plaintiffs contend that they are entitled to relief under the ADA because Decedent

was denied the benefits of proper police training on encounters with disabled individuals.  <u>See</u>

Mem. Op., dated Feb. 10, 2003, at 5, 11, Ex. "D."  As in <u>Bates</u>, however, Decedent was not

denied of the benefits of police training <u>because of his disability</u>.  Rather, the alleged denial of

benefits was caused solely by the fact that Decedent engaged in a savage attack of Officers

Berresford and Hart as they were attempting to execute an involuntary commitment order.

Additionally, Plaintiff cannot establish that Decedent was denied any "benefit."  While

Plaintiffs insist that Decedent was denied the "benefits" of properly trained police, both Officers

Berresford and Hart had received all of the training required by Pennsylvania law and were

certified and in good standing with MPOETC at the time of the incident.  <u>See</u> Grand Jury Report,

at 29, Ex. "E."  Moreover, as discussed in Section VI.A.2. above, both officers had over 25 years

of police experience during which they had received training on dealing with emotionally

disturbed people and had first hand experience in doing so.  <u>See</u> Berresford Dep. at 80-83, Ex.

"G"; Hart Dep. at 7, 65-68, Ex. "H."

> b.    *Plaintiffs Cannot Demonstrate That the Use of Deadly Force Was*
> *"Objectively Unreasonable"*

The Fourth Circuit in <u>Bates</u> found that summary judgment in that case was warranted for

an additional reason that is equally applicable here.  Specifically, the Fourth Circuit held that a

plaintiff could not prevail on an ADA claim where an officer's conduct is objectively reasonable.

<u>See</u> <u>Bates</u>, 216 F.3d at 373; <u>see also</u> <u>Anthony v. City of New York</u>, No. 00 Civ. 4688(DLC),

2001 WL 741743, at *11 (S.D.N.Y. July 2, 2001) (entering summary judgment in favor of

-20-

defendants on ADA claim where "it was objectively reasonable for the officers to conclude from the totality of the circumstances that Anthony posed a danger to herself").

As discussed above in Section V.A.1., the undisputed facts in this case show that the use of deadly force was objectively reasonable because it was necessary to prevent serious bodily injury or death to both Officers Berresford and Hart. Indeed, a Grand Jury has already concluded that the use of deadly force by Officer Hart was reasonable and entirely justified. There is nothing in the record to suggest otherwise. See Grand Jury Report, at 35, Ex. "E." Thus, even under Bates' alternative framework for analyzing ADA claims, Plaintiffs cannot point to evidence which can be used to sustain their claim. Accordingly, summary judgment in favor of the WSPD on Plaintiffs' ADA claim is appropriate.

## VII.    CONCLUSION

For the foregoing reasons, the WSPD and Chief Dougherty respectfully request that this Court enter summary judgment in their favor and against Plaintiffs.

Respectfully submitted,

Dated: February 28, 2003

David J. MacMain (Pa. Atty. I.D. No. 59320)
Gregory J. Hauck (Pa. Atty. I.D. No. 82958)
MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109-1099
(215) 772-1500

Attorneys for Defendants West Shore Regional
Police Commission and Chief Howard Dougherty

-21-

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing proposed order,

motion for summary judgment, supporting brief and appendix to be served, via first-class mail,

postage prepaid, upon each of the following persons:

> Gerald J. Williams, Esquire
> Williams, Cuker & Berezofsky
> One Penn Center
> 1617 JFK Boulevard, Suite 800
> Philadelphia, PA  19103-1895
> Attorney for Plaintiffs
>
> John F. Yaninek
> Mette, Evans & Woodside
> 3401 North Front Street
> P.O. Box 5950
> Harrisburg, PA  17110-0950
> Attorney for Holy Spirit Hospital and
> Cumberland County

Dated:  February 28, 2003                    _____
                                             Gregory J. Hauck