2 + cv

FILED
HARRISBURG

APR 8 7 2003

MARY E. D'ANDREA, CLERK
Per _____ 9g
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH I. SCHORR and SUSAN SCHORR, in their own right and as personal representatives of the Estate of RYAN K. SCHORR, Plaintiffs, | : : : : : : | JURY TRIAL DEMANDED |
| v. | : : | NO.: 1:CV-01-0930 |
| WEST SHORE REGIONAL POLICE DEPARTMENT, HOWARD DOUGHERTY, CUMBERLAND COUNTY, and HOLY SPIRIT HOSPITAL, Defendants. | : : : : : : | HONORABLE YVETTE KANE |

## DEFENDANT CUMBERLAND COUNTY'S REPLY BRIEF IN RESPONSE TO PLAINTIFFS' BRIEF IN OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

Defendant Cumberland County incorporates herein by reference the

Procedural History, Statement of the Facts, Statement of Question Presented, and

Argument sections of Defendant Cumberland County's Brief in Support of Its Motion for Summary Judgment.

In further support of Cumberland County's Motion for Summary Judgment and in reply to Plaintiffs' Brief in Opposition thereto, Defendant Cumberland County specifically denies that the County can be held liable for the acts or omissions of Holy Spirit Hospital.  This is because a municipality may not be liable in a §1983 action under the doctrine of *respondeat superior*.  Monell v. Department of Social Services, 436 U.S. 658 (1978).  Therefore, any conduct by Holy Spirit Hospital which Plaintiffs contend was violative of Plaintiffs' rights cannot be imputed to Cumberland County.

Plaintiffs argue in their Brief that "the County was responsible for promulgating and overseeing standards and practices utilized at Holy Spirit to provide County services under contract."  See Plaintiffs' Brief in Opposition to the Motion for Summary Judgment of Defendant Cumberland County (hereinafter "Plaintiffs' Brief"), page 1.

Even if this assertion were true, and/or if Holy Spirit's conduct could be imputed to Cumberland County, which Defendant Cumberland County specifically denies, the claim must still fail.  In paragraph 50 of the First Amended Complaint, Plaintiffs set forth the alleged customs, practices or policies allegedly

2

implemented and maintained by the County with deliberate indifference. Two of the alleged customs, practices and/or policies involved training of personnel. See First Amended Complaint, paragraphs 50(b) and 50(c). In order to establish that a failure to train was a result of deliberate indifference on the part of a local government unit, a Plaintiff must demonstrate that: (i) the supervisor had contemporaneous knowledge of the offending incident or had knowledge of a prior pattern of similar incidents; and (ii) the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. Montgomery v. De Simone, 15 9 F.3d 120, 127 (3d Cir. 1998); Bonenberg v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997); see also City of Canton v. Harris, 489 U.S. 378, 380, 390 n. 10 (1989) (holding that a Section 1983 plaintiff must establish that "the need for further training must have been plainly obvious to the city policymakers who, nevertheless, are 'deliberately indifferent' to the need.")

Here, it is clear that the County did not have contemporaneous knowledge of the incident involving the Decedent. As stated previously in Defendant Cumberland County's Brief in Support of Its Motion for Summary Judgment, the Decedent never had any direct contact with any Cumberland County official or

employee.  The County was not directly involved in the encounter with Decedent at Holy Spirit Hospital.

Also, the County had no knowledge of a pattern of incidents similar to the one involving Decedent.  There are no facts within the record to show the County having any prior knowledge of any elopements at Holy Spirit Hospital.

Therefore, the Plaintiffs cannot point to any evidence that would show that the County had any knowledge that there had been a pattern of incidents like the one at issue in this case.  Such evidence is essential to prove that the County was deliberately indifferent to the rights of persons with whom Holy Spirit Hospital came into contact.  See Montgomery, 159 F.3d at 127; Bonenberg, 132 F.3d at 25. Without a showing of prior problems with elopements of individuals subject to §302 involuntary commitment, and in turn, deliberate indifference to such problems, Plaintiffs do not have the evidentiary support for an important element of their §1983 claims.

Also, in order to prevail on a §1983 claim, a Plaintiff must also establish that there is a "causal link" between the failure to train and the alleged constitutional deprivation.  Harris, 489 U.S. at 385.  A local government unit can only be liable under §1983 where its failure to train is a "moving force" behind the

constitutional violation.  Harris 489 U.S. at 389; Monell v. Department of Social

Services, 436 U.S. 658, 694 (1978).

Although Plaintiffs plead that Cumberland County/Holy Spirit's alleged

failure to train physicians and other personnel with regard to §302 commitments

and on how to communicate with police and family members with regard to the

condition of §302 patients were the cause of the shooting of the Decedent, there

were actually too many intervening, superseding causes for Plaintiffs' contention

to be accurate.

Ryan Schorr made his way to the Uni Mart on Erford Road in East

Pennsboro Township following his elopement from Holy Spirit Hospital.  He

consumed soft drinks without paying for them and read pornographic magazines

before arranging a limousine ride to the Harrisburg Hilton.  While at the Hilton, he

was escorted out of the hotel because he never had a hotel reservation.  See

Appendix to Defendants West Shore Regional Police Commission and Chief

Howard Dougherty's Motion for Summary Judgement, Exhibit "E," Grand Jury

Report, pages 14-17.

It is undisputed that Ryan Schorr then made his way back across the

Susquehanna River to his home.  It was hours from his 9:07 a.m. elopement when

he ultimately encountered the police officers at his home.   Ryan Schorr's

altercation with police took place just prior to noon.   See Appendix to Defendants

West Shore Regional Police Commission and Chief Howard Dougherty's Motion

for Summary Judgement, Exhibit "E," Grand Jury Report, pages 14-17.

Holy Spirit Hospital's conduct is not related to Ryan Schorr's death any

more than the Hospital should be responsible for Ryan Schorr's petty thefts at the

Uni Mart following his elopement.  Ryan Schorr's own activities following his

elopement break any causal chain of responsibility of the Hospital, if any

responsibility existed which is strongly disputed.

In paragraph 50 of the First Amended Complaint, Plaintiffs also allege that

Cumberland County implemented/maintained with deliberate indifference the

custom/practice or policy of failing to employ or maintain health care providers

qualified to provide treatment to individuals subject to §302 involuntary

commitment.  See First Amended Complaint, paragraphs 50a and 50d.  However,

Holy Spirit, not Cumberland County, hired and/or retained the health care

providers who provided treatment to the Decedent.  Moreover, the health care

providers involved in Decedent's care were all adequately experienced and

qualified as has been detailed in Defendant Cumberland County's Motion for Summary Judgment. See Cumberland County's Motion for Summary Judgment, paragraphs 14-21. Therefore, even if Cumberland County performed "audits," as the Plaintiffs allege, there was nothing in the background, qualifications, experience or training of these health care providers which would have put Cumberland County on notice that these health care providers were allegedly not qualified. Therefore, the Plaintiffs cannot point to any evidence that would show that Cumberland County had any knowledge that any of the health care providers involved in this case were not qualified. Such evidence is essential to prove that the County was deliberately indifferent in this regard. See Montgomery, 159 F.3d at 1227; Bonenberg, 132 F.3d at 25.

Furthermore, Defendant Cumberland County wishes to point out that Plaintiffs' Brief in Opposition to Motion for Summary Judgment of Defendant Cumberland County contains many so-called "facts" for which the Plaintiffs do not cite to the record and which are therefore unsubstantiated. This is particularly true with regard to Plaintiffs' rendition of the alleged relationship between Cumberland County and Holy Spirit Hospital.

7

For all of the above-stated reasons, Cumberland County's Motion for Summary Judgement should be granted and Count II of the First Amended Complaint should be dismissed as to Defendant Cumberland County, with prejudice.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By: _____

John F. Yaninek, Esquire
Sup. Ct. I.D. No. 55741
3401 N. Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000
Attorneys for Defendant Holy Spirit
Hospital and Cumberland County

DATED: April 7, 2003

8

## <u>CERTIFICATE OF SERVICE</u>

      I, JOHN F. YANINEK, ESQUIRE, hereby certify that I am serving a copy of the foregoing document upon the person(s) and in the manner indicated below, which service satisfies the requirements of the Federal Rules of Civil Procedure, by depositing a copy of same in the United States Mail at Harrisburg, Pennsylvania, with first-class postage, prepaid, as follows:

Gerald J. Williams, Esquire
Williams, Cuker and Berezofsky
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 800
Philadelphia, PA  19103-1895

David J. MacMain, Esquire
Mongtomery, McCracken,
Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109

Stephen S. Pennington, Esquire
Williams, Cuker and Berezofsky
One Penn Center at Suburban
1617 JFK Boulevard
 Station Suite 800
Philadelphia PA  19103

**METTE, EVANS & WOODSIDE**

By: _____

John F. Yaninek, Esquire
Sup. Ct. I.D. No.  55741
3401 North Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
(717) 232-5000

Attorneys for Defendants Holy Spirit
Hospital and Cumberland County

Date: April 7, 2003

:322490 _1