>+o cl

FILED
HARRISBURG

APR 0 7 2003

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH I. SCHORR and SUSAN SCHORR,          :
In their own right and as personal          :
representatives of the Estate of RYAN K.    :
SCHORR,                                      :
                                             :
                    Plaintiffs,              :    No.  1:CV-01-0930
                                             :
        vs.                                  :
                                             :
WEST SHORE REGIONAL POLICE                   :    The Honorable Yvette Kane
COMMISSION, HOWARD DOUGHERTY,                :
CUMBERLAND COUNTY, ROBERT                    :
GORIL and HOLY SPIRIT HOSPITAL,              :
                                             :
                    Defendants.              :
                                             :

### DEFENDANTS WEST SHORE REGIONAL POLICE COMMISSION AND CHIEF HOWARD DOUGHERTY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# I.     INTRODUCTION

In response to the motion for summary judgment that was filed by the West Shore Regional Police Commission (the "WSPD") and Chief Howard Dougherty, Plaintiffs submit a five-page brief in which they argue that this Court should refuse to enter summary judgment on: (a) Plaintiffs' claims against the WSPD and Chief Dougherty under 42 U.S.C. § 1983 ("Section 1983"); and (b) Plaintiffs' claim against the WSPD under the Americans with Disabilities Act ("ADA").  Plaintiffs' abbreviated arguments are based on misstatements of the record and misapprehensions of the applicable law and should therefore not be relied upon to show the existence of any genuine issues of material fact.

# II.     ARGUMENT

## A.     Plaintiffs' Argument That this Court Should Not Grant Summary Judgment on Their Section 1983 Claim Is Misplaced

In order to establish liability against the WSPD and Chief Dougherty under Section 1983, Plaintiffs must demonstrate:  (1) the deprivation of a Constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation.  Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). Plaintiffs have failed to show that there are genuine issues of material fact surrounding any of these three elements.

### 1.     Plaintiffs Misapprehend Recent Caselaw from this Circuit Which Shows That They Must Demonstrate the Deprivation of a Constitutional Right

In their brief, Plaintiffs contend that the WSPD has misstated the law, arguing that they can prevail on their Section 1983 claim without proving the deprivation of a Constitutional right. Pls. Br. at 1-2.  Specifically, Plaintiffs assert that the framework for proving a Section 1983 claim outlined by the WSPD and Chief Dougherty in their initial brief (at 5) is incorrect because

it "has been squarely rejected in this case by the Magistrate Judge's Report and Recommendation regarding defendants' motion to dismiss" and because it ignores "the law of the Third Circuit" as set forth in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994). Id. at 1. Plaintiffs fail to recognize, however, that their reliance on Fagan and the Magistrate Judge's ruling is misplaced because a new decision was just issued – Brown v. Commonwealth of Pennsylvania Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473 (3d Cir. 2003) – in which the Third Circuit explicitly stated that Fagan cannot be read for the very proposition that Plaintiffs propose.

In Brown, the plaintiffs brought a Section 1983 claim against the City of Philadelphia, claiming that the City had failed to train its emergency medical technicians. The claim arose when the plaintiffs' son had choked on a grape and emergency personnel failed to transport him to the hospital quickly enough to prevent his death. The trial court granted the City of Philadelphia's motion for summary judgment on the ground that the plaintiffs had failed to prove the deprivation of a constitutional right.

On appeal, the plaintiffs argued that the trial court erred in granting the motion for summary judgment. The Third Circuit disagreed and affirmed the decision of the trial court. The Third Circuit explained:

> In Fagan[ v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994)], we held "that a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution." Id. at 1294. However, for there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights.
>
>     \*      \*      \*      \*
>
> [Appellants] allege that the City of Philadelphia had a number of policies involving EMTs which were enacted with deliberate indifference and which caused harm to them and their son. Even if we accept everything Appellants allege as true, they will have still failed to establish that the City's policies caused constitutional harm. . . . The failure of the City and its EMTs to rescue Shacquiel Douglas from privately-caused harm was not an infringement of Appellants' constitutional rights.

Brown, 318 F.3d at 482-83 (emphasis in original); see also Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992) (holding that a city may be liable for a policy or custom of failing to train its employees only "if a city employee violates another's constitutional rights.").

Since the decision in Brown, at least four other courts have interpreted that decision to mean that a plaintiff in a Section 1983 case such as this must establish that a deprivation of a Constitutional right occurred.  See Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"); Gerber v. Sweeney, No. CIV.A. 02-241, 2003 WL 1090187, at *6 (E.D. Pa. Mar. 7, 2003) ("There can be no section 1983 liability, however, where there is no violation of the plaintiff's constitutional rights."); DeSimone v. Coatsville Sch. Dist., No. Civ.A. 02-0018, 2003 WL 345338, at *2 (E.D. Pa. Feb. 13, 2003) ("As a threshold issue, a court must determine in every case 'whether a plaintiff has successfully alleged a deprivation of a right secured by the Constitution.'"); Dintino v. Echols, No. CIV.A. 01-3574, 2003 WL 215067 (E.D. Pa. Jan. 28, 2003) ("[T]here can be no municipal liability unless there is a violation of the plaintiff's constitutional rights").[1]

After insisting that they do not need to establish that a deprivation of a constitutional right occurred, Plaintiffs backpedal a bit, arguing that they have proven such a deprivation. Plaintiffs assert that a deprivation of a constitutional right occurred in this case because there was conduct which resulted "in creating a foreseeable risk of serious harm which [was] ultimately realized."  Pls. Br. at 3.  Notably, Plaintiffs fail to cite any provision of the Constitution which provides individuals with a right to be free from "foreseeable risks of serious harm."

---

[1] At the time this reply brief was filed, there were no pinpoint cites available for the Dintino decision.

The only allegation concerning a deprivation of a real Constitutional right can be found in Plaintiffs' Amended Complaint, where they claim that Decedent was deprived of his Constitutional right to life. See Compl. ¶¶ 36, 47, Defs. Ex. "A."[2]  As explained in the WSPD's initial brief (at 5-8), however, Plaintiffs cannot establish that an unconstitutional deprivation of the right to life occurred unless they can show that the taking of Decedent's life was unreasonable. Graham v. Connor, 490 U.S. 386, 395 (1988).  Because the undisputed facts in this case show that the use of deadly force was objectively reasonable as it was necessary to prevent serious bodily injury or death to both Officers Berresford and Hart, see Grand Jury Report, at 35, Defs. Ex. "E," Plaintiffs cannot demonstrate the threshold element of their Section 1983 claim.

> 2.   Plaintiffs Fail to Distinguish the Cases Which Require the Entry of Summary Judgment Where Police Training Was Provided in Accordance with State Law

In the initial brief filed by the WSPD and Chief Dougherty (at 10-12), they argued that Plaintiffs could not demonstrate the second element of their Section 1983 claim because, inter alia, Officers Berresford and Hart had received the training required to be received by officers in the Commonwealth of Pennsylvania.  Plaintiffs contend that "[n]one of the cases" cited by the WSPD and Chief Dougherty stand for the proposition that they can "escape liability on the basis of the admitted fact that both Officers Berresford and Hart met the basic requirements set by Pennsylvania's Municipal Police Officers Education and Training Commission." Pls. Br. at 4. Plaintiffs' assertion is simply untrue as all of the cases that the WSPD and Chief Dougherty relied on for this proposition were accurately cited. See Tapia v. City of Greenwood, 965 F.2d

---

[2] "Defs. Ex." refers to the set of exhibits that were submitted in the Appendix to the WSPD and Chief Dougherty's Motion for Summary Judgment.

336, 339 (7th Cir. 1992) (reversing judgment against defendants where "Ms. Tapia offered no evidence to indicate that the City failed to adhere to the minimum standards for training police officers under Indiana law."); <u>Ross v. Town of Austin</u>, No. NA 01-15-C-B/K, 2002 WL 31160139, at *9 (S.D. Ind. Sept. 23, 2002) (granting summary judgment where "Captain Noble received at least the minimum amount of training for the calendar years 1995-1999"), Defs. Ex. "N"; <u>Johnson v. City of Milwaukee</u>, 41 F. Supp. 2d 917, 931 (E.D. Wis. Feb. 25, 1999) (granting summary judgment where "officer Brown received training . . . which complied with the minimum state requirements"); <u>Williams v. Musser</u>, No. 94 C 4140, 1997 WL 403509, at *10 (N.D. Ill. July 16, 1997) (granting summary judgment where "the training received by all of the officers in this case satisfied Illinois law"), Defs. Ex. "O."

Plaintiffs then argue that if this Court were to follow this line of cases, "all Pennsylvania police departments would be immune from training claims" brought under Section 1983. Pls. Br. at 4 n.1. This is a broad overstatement of the impact of the adoption of such a rule. Not <u>all</u> police departments would be shielded from Section 1983 liability as those that failed to ensure that their officers received the training required by Pennsylvania law would obviously still be subject to suit.

3.      Plaintiffs' Contention That Officers Berresford and Hart Received No Training Applicable to the Encounter with Decedent Is Contradicted by the Record

In their initial brief (at 15-16), the WSPD and Chief Dougherty argued that Plaintiffs could not satisfy the third element of their Section 1983 claim because Officers Berresford and Hart had received proper training. Plaintiffs directly dispute this argument, asserting that "defendants have admitted that no training applicable to the encounter with Ryan Schorr was in place before the incident." Pls. Br. at 3. This assertion is demonstrably false. Officers Berresford and/or Hart specifically testified that they had received training on various topics

relating to individuals with mental disabilities, including:  (1) the use of pepper spray and its

effect upon people who have mental disabilities; (2) the serving of involuntary commitment

warrants on people who have been involuntarily committed; and (3) the handling of people who

have some type of emotional disturbance.  Berresford Dep. at 80-83, Defs. Ex. "G"; Hart Dep. at

65-68, Defs. Ex. "H."  Plaintiffs' failure to acknowledge this testimony constitutes a blatant

misstatement of the factual record.

In support of their argument that there exists a genuine issue of material fact as to

whether the police training was adequate, Plaintiffs cite only one item from the record – the

WSPD's Answers to Plaintiffs' Interrogatories.  In those discovery responses, the WSPD stated

that:

- It had not performed any self-evaluations to ensure that its services, programs and activities would be provided to individuals in a non-discriminatory way, see Responses to Plaintiffs' First Set of Interrogatories addressed to WSPD, at No. 13, Pls. Ex. "F";[3]

- It had not developed any plans to ensure that its services, programs and activities would be provided to individuals in a non-discriminatory way, see id. at No. 14;

- It had not made any efforts to ensure that its services, programs and activities would be provided to individuals in a non-discriminatory way, see id. at No. 15;

- It had not made any efforts to modify its policies, practices and procedures to ensure that individuals with disabilities could participate in its services, programs and activities, see id. at No. 16; and

- It had not provided training regarding responding to the needs of individuals with disabilities, see id. at No. 17.

Plaintiffs based these interrogatories upon Justice Department regulations relating to the

Americans with Disabilities Act – not Section 1983.  These regulations require public entities to

---

[3] "Pls. Ex." refers to the set of exhibits that were submitted in the Appendix to Plaintiffs' Response to the WSPD and Chief Dougherty's Motion for Summary Judgment.

"evaluate its current services, policies, and practices, and the effect thereof, that do not or may not meet the requirements of [the regulations]" and to modify such services, policies, and practices to the extent necessary to bring them into compliance. 28 C.F.R. § 35.105(a). Putting aside the issue of whether these regulations even apply to the WSPD, the mere fact that the WSPD did not conduct an evaluation, develop a plan or make efforts to ensure that disabled persons could participate in its services – whatever those services may be – does not mean that the WSPD failed to train its officers on how to handle individuals with mental disabilities. See Hainze v. Richards, 207 F.3d 795, 802 (5th Cir. 2000) (holding that although the county did not conduct an evaluation of its policies and procedures in responding to mental health disturbances, "[w]e do not suggest that the County's law enforcement offices received no training to deal with mental health situations"). Moreover, while the WSPD indicated in its interrogatory answers that it did not provide training to its police officers "regarding responding to the needs of individuals with disabilities," see Responses to Plaintiffs' First Set of Interrogatories addressed to WSPD, at No. 17, Pls. Ex. "F" (emphasis added), the record shows that Officers Berresford and Hart did receive training about how to respond to calls involving individuals with disabilities. See Berresford Dep. at 80-83, Defs. Ex. "G"; Hart Dep. at 65-68, Defs. Ex. "H."

**B.** **Plaintiffs Fail to Cite Any Record Evidence Which Shows That Summary Judgment on Their ADA Claim Is Unwarranted**

Plaintiffs make two arguments as to why summary judgment is inappropriate on their ADA claim against the WSPD. Neither of these argument is sufficient to avoid the entry of summary judgment in favor of the WSPD.

First, Plaintiffs contend that summary judgment is inappropriate because "it is an admitted fact that [the WSPD] took no steps to bring itself into compliance with the ADA." Pls. Br. at 5. In making this argument, Plaintiffs, once again, rely solely on the WSPD's Answers to

Plaintiffs' Interrogatories, in which the WSPD indicated that it did not conduct an evaluation, develop a plan or make efforts to ensure that disabled persons could participate in its services. Id. (citing Responses to Plaintiffs' First Set of Interrogatories addressed to WSPD, at Nos. 13-17, Pls. Ex. "F"). This fact does not advance Plaintiffs' ADA claim that the Decedent was subjected to discrimination by the WSPD on the basis of his mental disorder. See Am. Compl. ¶ 66, Defs. Ex. "A." Indeed, the ADA itself does not require public entities to initiate self-evaluations, but rather, it is only the implementing regulations which require certain public entities to evaluate its services. 28 C.F.R. § 35.105(a). Courts have held that a public entity's failure to conduct this self-evaluation cannot be used to establish a cause of action for money damages under the ADA. Matthews v. Jefferson, 29 F. Supp. 2d 525, 540 (W.D. Ark. 1998) ("[M]oney damages against a public entity for failure to formulate a transition plan or timely comply with the plan are not available."); Miller v. City of Johnson City, No. 2:94-CV-246, 1996 WL 406679, at *2 (E.D. Tenn. May 29, 1996) (same).

Second, Plaintiffs contend that this Court should refrain from entering summary judgement on their ADA claim because the WSPD "provided no ADA training whatsoever to Officers Berresford and Hart." Pls. Br. at 5. As discussed above, however, Plaintiffs have mischaracterized the record as both officers received training on a variety of topics relating to dealing with individuals suffering from mental impairments. See Berresford Dep. at 80-83, Defs. Ex. "G"; Hart Dep. at 65-68, Defs. Ex. "H." Even if it were true that the officers had received no training, Plaintiffs' ADA claim requires proof that the officers discriminated against Decedent "because of" his bipolar disorder and that the use of force by the officers was objectively unreasonable. Bates v. Chesterfield County, 216 F.3d 367, 373 (4th Cir. 2000). In their half-page argument related to their ADA claim, Plaintiffs have not pointed to any evidence

-8-

which could be used to support these critical elements of their ADA claim.  As the record shows, (1) the shooting occurred "because of" the fact that Decedent had stopped taking his prescribed medication, had been using mind-altering drugs (such as ecstacy) and ambushed Officers Berresford and Hart while they were attempting to serve an involuntary commitment order; and (2) deadly force was not objectively unreasonable as it was necessary to prevent the infliction of serious bodily injury upon or the death of the officers.  See Grand Jury Report, at 2-3, 27-28, 35, Defs. Ex. "E."

III.    **CONCLUSION**

For the foregoing reasons and for the reasons set forth in their initial brief, the WSPD and Chief Dougherty respectfully request that this Court enter summary judgment in their favor and against Plaintiffs.

Respectfully submitted,

Dated: April 4, 2003

David J. MacMain (Pa. Atty. I.D. No. 59320)
Gregory J. Hauck (Pa. Atty. I.D. No. 82958)
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109-1099
(215) 772-1500

Attorneys for Defendants West Shore Regional
Police Commission and Chief Howard Dougherty

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the West Shore Regional Police

Commission and Chief Howard Dougherty's Reply Brief in Support of Their Motion for

Summary Judgment to be served, via first-class mail, postage prepaid, upon each of the

following persons:

> Gerald J. Williams, Esquire
> Williams, Cuker & Berezofsky
> One Penn Center
> 1617 JFK Boulevard, Suite 800
> Philadelphia, PA  19103-1895
> Attorney for Plaintiffs
>
> John F. Yaninek
> Mette, Evans & Woodside
> 3401 North Front Street
> P.O. Box 5950
> Harrisburg, PA  17110-0950
> Attorney for Holy Spirit Hospital and
> Cumberland County

Dated:  April 4, 2003

Gregory J. Hauck